Steve McCOY, Administrator of the Estate of Georgia (McCoy) Walker, Deceased *v.* Billy WALKER

94-96                                          876 S.W.2d 252

Supreme Court of Arkansas
Opinion delivered May 16, 1994

*Killough & Ford*, by: *Danny W. Glover*, for appellant.

*Joseph Boeckmann*, for appellee.

STEELE HAYS, Justice. This case involves homestead rights and the interpretation of Ark. Code Ann. §§ 28-39-201 and 28-1-102(a)(1) (1987). Appellant Steve McCoy, Administrator of the Estate of Georgia (McCoy) Walker, contends the minor grand-children of a decedent who would inherit from the decedent under the laws of descent and distribution have homestead rights under the Arkansas Probate Code. We find no merit in his argument and affirm the order of the probate court.

Georgia and Tommy McCoy married in 1961. They built a home on twelve acres in Cross County. The McCoys had four children and their daughter, Sherry, had three children: Holly Parrish, Tommy Parrish, and Linda Parrish. Following the death of Sherry Parrish, her three minor children moved in with Georgia and Tommy McCoy. Subsequently, Georgia and Tommy McCoy were appointed guardians of the three children.

Tommy McCoy died and Georgia McCoy continued to serve as guardian of her three grandchildren. In 1990 Georgia McCoy married the appellee, Billy Walker. Billy and Georgia (McCoy) Walker resided in Georgia's home in Cross County. In addition, Sherry's three children and Steve McCoy continued to reside in the decedent's home in Cross County.

Georgia died intestate on July 9, 1993. She owned the home and surrounding twelve acres which was non-marital property. Her three surviving children were over the age of twenty-one. At the time of Georgia's death, Holly was thirteen, Tommy was eleven and Linda was eight. Steve McCoy is now the guardian of Georgia's grandchildren and administrator of her estate.

Billy Walker was awarded homestead rights in the home, however, a petition to award homestead rights to the grandchildren was denied. Steve McCoy appeals from that order.

Steve McCoy contends the decedent's minor grandchildren are entitled to homestead rights under Ark. Code. Ann. § 28-39-201 (1987). Section 28-39-201, Rights of surviving spouse and children, provides in part:

> (a) If the owner of a homestead dies leaving a surviving spouse, but no children, and the surviving spouse has no separate homestead in his or her own right, the homestead shall be exempt and the rents and profits thereof shall vest in the surviving spouse during his or her natural life.

> (b) However, if the owner leaves one (1) or more children, the child or children shall share with the surviving spouse and be entitled to one-half (1/2) the rents and profits till each of them arrives at twenty-one (21) years of age — each child's right to cease at twenty-one (21) years of age — and the shares to go to the younger children and then

all to go to the surviving spouse. The surviving spouse or children may reside on the homestead or not.

The statute specifically limits homestead rights to the surviving spouse and to the "child or children" of the decedent. However, Ark. Code Ann. § 28-1-102 (1987), Definitions, provides in part:

(a) As used in this code, unless the context otherwise requires:

(1) "Child" denotes a natural or adopted child, but does not include a grandchild or other more remote descendant or an illegitimate child except such as would inherit under the law of descent and distribution; . . .

Steve McCoy claims the definition of "child" found in Ark. Code Ann. § 28-1-102 includes a *grandchild who would inherit under the law of descent and distribution.* Since the grandchildren would take their mother's share of Georgia's estate under the laws of descent and distribution, McCoy submits they would be "children" entitled to homestead rights under the probate code. Walker, however, maintains the language, "except such as would inherit under the law of descent and distribution," simply modifies "illegitimate child" and not "grandchild."

The first rule in considering the meaning of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Mountain Home Sch. Dist.* v. *T.M.J. Builders, Inc.*, 313 Ark. 661, 858 S.W.2d 74 (1993). The basic rule of statutory construction to which all other interpretive guides defer is to give effect to the intent of the legislature. *Id.* In interpreting a statute and attempting to construe legislative intent, the appellate court looks to the language of the statute, the subject matter, the object to be accomplished, the purpose to be served, the remedy provided, legislative history, and other appropriate means that throw light on the subject. *Gritts* v. *State*, 315 Ark. 1, 864 S.W.2d 859 (1993).

We hold the General Assembly did not intend for a grandchild to be defined as a child under § 28-1-102(a)(1). First, "[i]n its ordinary sense the word 'or' is a disjunctive particle that marks an alternative, generally corresponding to 'either,' as 'either this or that'; it is a connective that *marks an alternative.*" *Beasley* v.

*Parnell*, 177 Ark. 912, 9 S.W.2d 10 (1928) (emphasis added). Although the definition of "child," as it was originally enacted in Act 140 of 1949, contained the word "nor" rather than the word "or" immediately prior to the phrase "an illegitimate child," the word "nor" is a disjunctive conjunction. Thus, it is clear the legislature intended to mark separate categories.

Further, referential and qualifying phrases, where no contrary intention appears, relate only to the last antecedent. Sutherland Stat Const § 47.33 (5th Ed). On the other hand, evidence that a qualifying phrase is supposed to apply to all antecedents instead of only to the immediately preceding one may be found in the fact that it is separated from the antecedents by a comma. *Id.* In the case at hand, there is no comma separating "illegitimate child" and the modifier "except such as would inherit under the law of descent and distribution." Thus, we find the General Assembly intended for "except such as would inherit . . ." to only modify "illegitimate children." *See Richardson* v. *State*, 314 Ark. 512, 863 S.W.2d 572 (1993).

■ Additionally, it is significant that the General Assembly specifically addresses the circumstances in which an illegitimate child may inherit real or personal property. Ark. Code Ann. § 28-9-209 (1987). This acknowledges a distinction between an illegitimate child who may inherit under the laws of descent and distribution and one who may not. We believe the General Assembly intended to grant homestead rights to those illegitimate children who could inherit under the laws of descent and distribution. The General Assembly has determined that certain classes of illegitimate children should be treated "in the same manner as a legitimate child." § 28-9-209. Consequently, there was a need to differentiate between classes of illegitimate children, hence the language in § 28-1-102 (a)(1). However, there is not a similar provision which contemplates treating a grandchild or a "more remote descendant" in the same manner as a child.

■ Finally, the decision in *Brown* v. *Brown*, 104 Ark. 313, 149 S.W. 330 (1912), provides additional guidance. In *Brown*, the appellant contended the minor grandchildren of the decedent were entitled to share the homestead with the widow. This Court concluded that under the plain language of the Constitution, the homestead exemption was limited to the widow and children.

The Court concluded grandchildren were not mentioned or provided for under Ark. Const. art. 9, § 6, which addresses the homestead right of the widow and minor children.

Ark. Code Ann. § 28-39-201 follows the language of Ark. Const. art. 9, § 6. As in the Constitution, § 28-39-201 does not mention or provide for grandchildren. Although Steve McCoy relies on the definition in § 28-1-102, it is significant that the General Assembly elected to track the language of the Constitution in enacting § 28-39-201.

■ Accordingly, we find the trial court correctly determined the minor grandchildren were not entitled to homestead rights in the home of Georgia Walker.

Affirmed.