The Honorable Bill J. Ford Bank Commissioner Arkansas State Bank Department 323 Center Street, Suite 500 Little Rock, Arkansas 72201-2613
Dear Mr. Ford:
This is in response to your request for an opinion on:
 Whether a national bank which has relocated its bank charter to the State of Texas from Arkansas and is now operating as a Texas national banking association, yet has retained two branch offices in Arkansas, is eligible to receive deposits of Arkansas public funds in accordance with A.C.A. § 19-8-101 to -107.
Arkansas Code Annotated § 19-8-104(a) (as amended by Act 770 of 1995) provides that "all public funds . . . shall be deposited in banks located
in the State of Arkansas." [Emphasis added.] Arkansas Code Annotated §19-8-105(a) (Repl. 1994) requires the Bank Commissioner annually to prepare "a list of all the banks or banking institutions doing business in this state which are members of the Federal Deposit Insurance Corporation" and concludes by stating that no public funds "shall be deposited in any bank other than those contained in the list." [Emphasis added.]
Your question, in essence, is whether a national bank whose charter address is not in Arkansas, but which has one or more branches in Arkansas, is "located" and "doing business" in the state for purposes of A.C.A. §§ 19-8-104(a) and -105(a) and thus eligible to receive deposits of public funds under A.C.A. §§ 19-8-101 to -107 (Repl. 1994 and as amended by Acts 232 and 770 of 1995).
Although the issue can be settled definitively only by a court through litigation, or by the General Assembly through amendment of the statutory law, it is my opinion that a national bank whose charter address is not in Arkansas, but which has one or more branches in Arkansas, is "located" and "doing business" in the state for purposes of A.C.A. §§ 19-8-104(a) and -105(a) and thus is eligible to receive deposits of public funds under A.C.A. §§ 19-8-101 to -107.[1] My rationale is set forth below.
First, I conclude that the word "located" and the phrase "doing business," as used in the statutes, have the same meaning. "Location" in Arkansas is a requirement of eligibility for public funds deposit; "doing business" in Arkansas is a requirement for inclusion in the Bank Commissioner's list, which in turn is a requirement of eligibility for public funds deposit.
The ordinary meanings of the words used might suggest that the word "located" means something somewhat more restrictive than the phrase "doing business"; in other words, most people probably would infer that "located" requires more of a physical presence in the state than does "doing business." In this case, however, interpretation of the phrases to mean different things would lead to an absurd result: the Bank Commissioner would be required by A.C.A. § 19-8-105(a) to prepare a list that could contain the names of banks that are ineligible under A.C.A. §19-8-104(a) to receive deposits of public funds (i.e., banks that are "doing business" in Arkansas but not "located" in the state). The courts will, if possible, avoid statutory interpretations that lead to absurd results. Mings v. State, 316 Ark. 650, 873 S.W.2d 559 (1994); Hervey v.Southern Wooden Box, Inc., 253 Ark. 290, 486 S.W.2d 65 (1972).
Another indication that "located" should not be interpreted to require more than "doing business" is the fact that the statute originally required only the preparation of a list of banks "doing business" in the state and prohibited the deposit of public funds in any bank not on the list. See Act 21 of 1935. The provision that all public funds be deposited in banks "located" in the state was not added to the statute until the adoption of Act 107 of 1973 and, in connection therewith, the General Assembly did not alter or amend the "doing business" language. I conclude, therefore, that the General Assembly intended "located" and "doing business" to be synonymous.
The Supreme Court of Arkansas has stated the fundamental rules of statutory interpretation as follows:
 The first rule in considering the meaning of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. McCoy v. Walker, 317 Ark. 86, 876 S.W.2d 252 (1994); Mountain Home Sch. Dist. v. T.M.J. Builders, Inc., 313 Ark. 661, 858 S.W.2d 74 (1993). The basic rule of statutory construction to which all other interpretive guides defer is to give effect to the intent of the legislature. McCoy, supra. In interpreting a statute and attempting to construe legislative intent, the appellate court looks to the language of the statute, the subject matter, the object to be accomplished, the purpose to be served, the remedy provided, legislative history, and other appropriate means that throw light on the subject. McCoy, supra; Gritts v. State, 315 Ark. 1, 864 S.W.2d 859 (1993).
Henson v. Fleet Mortgage Co., 319 Ark. 491, 495, 892 S.W.2d 250 (1995).
The court has also stated, however:
 When a statute is clear, it is given its plain meaning and we do not search for legislative intent. That intent must be gathered from the plain meaning of the language used. Hinchey v. Thomasson, 292 Ark. 1, 727 S.W.2d 836 (1987).
Pugh v. St. Paul Fire Marine Ins. Co., 317 Ark. 304, 877 S.W.2d 577
(1994).
In my opinion, the statute is "clear" in the sense in which that word is used in the foregoing quote from Pugh: a bank "located" in the State of Arkansas (which, as discussed above, is another way of saying "doing business" in the state for purposes of A.C.A. §§ 19-8-104(a) and -105(a)) is eligible to receive public deposits under existing statutory law.
Neither "located" nor "doing business" is defined in the statutes. Neither, as used in the statutes at issue, has been interpreted in a decision of an Arkansas appellate court. Although one might look to their interpretation in decisions under federal or other state banking laws, I do not believe that reference to such other cases is necessary. In my opinion, it is clear, and not reasonably debatable, that a corporation conducting operations from two offices physically located within a jurisdiction is "doing business" in that jurisdiction within the ordinary meaning of that phrase.
Several courts have held, under federal and state statutes that made a bank's location relevant to the determination of a legal question, that banks are located in jurisdictions in which they maintain branches. SeeCitizens Southern National Bank v. Bougas, 434 U.S. 35 (1977) (holding, under a venue provision then permitting suit in any jurisdiction where a national bank was "located," that a national bank was located in a jurisdiction where it maintained a branch); SeattleTrust Savings Bank v. Bank of California, N.A., 492 F.2d 48 (9th Cir. 1974), cert. denied, 419 U.S. 844 (1974) (holding that a bank with branches in a jurisdiction was situated in the jurisdiction for purposes of 12 U.S.C. § 36(c), permitting branching in any state in which a national bank is "situated"); Connecticut National Bank v. Iacono,785 F.Supp. 30 (D.R.I. 1992) (holding, for purposes of diversity jurisdiction, that a national bank is located in, and therefore a citizen of, a state in which it maintained branches but not its charter address); Tri-Parish Bank and Trust Co. v. City of Eunice, 343 So.2d 1121
(La.Ct.App. 3rd Cir. 1977) (implicitly holding that a bank with a branch in a jurisdiction was located there, but holding that the bank was not domiciled there). As stated above, I do not place any particular reliance upon the opinions cited above, particularly in view of the facts that (a) none of them interpreted a statute that equated location with "doing business," (b) none of the cases cited above except Tri-ParishBank interpreted a statute having as one of its purposes the local deposit of local public funds, and (c) the decision in Tri-Parish Bank
ultimately was favorable to the more-local banks (i.e., the banks domiciled in the jurisdiction) and adverse to the bank merely having a branch in the jurisdiction.
I have reviewed the court's opinion in Arkansas State Bank Dep't v.Arkansas League of Sav. Inst., 307 Ark. 474, 821 S.W.2d 472 (1991), in which it was held that Arkansas savings and loan associations were not eligible to receive deposits of public funds under Act 21 of 1935. The court relied in part upon a rule of statutory interpretation to the effect that the meaning of statutory language "must be limited to its meaning as of the date it was employed or used," and found that savings and loan associations clearly were not "banks or banking institutions" in 1935, when the provision was enacted, though they more closely resembled such institutions at the time of the litigation. Arkansas State BankDep't, 307 Ark. at 477.
It might be maintained that the same rule should be applicable here. At the time of the provision's adoption in 1935, the only banks doing business in the state were Arkansas state banks, or national banks having their charter addresses in Arkansas. It is highly likely, therefore, that the General Assembly had only such institutions in mind when it passed Act 21 of 1935. It could be argued, under the rule stated in ArkansasState Bank Dep't, that the statutory language should be interpreted to include only institutions of the type then doing business in the state.
In my opinion, such an argument probably would not prevail. In ArkansasState Bank Dep't, the institutions at issue, savings and loan associations, existed and were doing business in Arkansas in 1935 and were deliberately excluded from the statute at that time. The General Assembly also from time to time in later years refused attempts made on behalf of savings and loan associations to amend the statute to include them as eligible depositories. The argument for interpreting the statute to include savings and loan associations became colorable only when Congress amended federal law to give savings and loan associations FDIC deposit insurance and to permit them to offer most, if not all, traditional banking services. In addition to applying the rule mandating interpretation of a statute in its historical context, the court also held that, "while it is true that savings and loans now more closely resemble banks, valid distinctions between the two still remain."Arkansas State Bank Dep't, 307 Ark. at 477. In other words, the court held that savings and loan associations were not "banks or banking institutions." The court also attributed significance to the failed efforts to amend the statute to include savings and loan associations expressly.
Here, interstate branching simply was unknown in Arkansas in 1935. This is not a case where the essential nature of the institutions at issue has changed; the bank at issue in your request is a national bank whose deposits are insured by the FDIC, exactly the sort of institution covered by the statute. The only change has been in the jurisdictions in which the institution may operate. In Arkansas State Bank Dep't, the court stated:
 At the time Act 21 was enacted in 1935, savings and loans were clearly excluded. This is not the case where savings and loans have come into being since legislation has been passed, and the general language in the legislation could be interpreted to include them. See generally N. Singer, Sutherland Statutory Construction §§ 49.01-49.11 (1984).
Arkansas State Bank Dep't, 307 Ark. at 474.
In my opinion, your request presents a case that cannot be distinguished on any significant ground from the case described in the second sentence of the quoted passage above: Arkansas branches of national banks having their charter addresses in other states have come into being since the passage of Act 21 of 1935, and the general language of the legislation can be interpreted to include them.[2] Indeed, it is difficult or impossible to exclude them without resorting to a tortured reading of the statute.
I am mindful of Act 459 of 1991, which amended A.C.A. § 19-8-104 to permit certain school districts located at least eighteen miles from the nearest "Arkansas bank" to deposit funds in "out-of-state banks" after securing a hardship waiver of the general rule of A.C.A. § 19-8-104(a). The terms in quotation marks in the foregoing sentence were not defined by the Act, and I must conclude that "Arkansas bank" means a bank "located" or "doing business" in the state. While Act 459 reinforces the proposition that the General Assembly intends for public funds to be deposited in Arkansas banks, the fact remains that that body has not, by law, imposed any condition relevant here beyond the requirement that the bank be "doing business" in the state. It would be entirely consistent with the statutory scheme and my opinion expressed herein for a hardship waiver to be denied a school district located fewer than eighteen miles from an Arkansas branch of a national bank with its charter address in another state, but more than eighteen miles from any Arkansas state bank or national bank with its charter address in Arkansas, on the ground that the branch is an "Arkansas bank" within the meaning of the term as used in the statute.
Finally, I am aware of Act 121 of 1973, which defines "bank," in part, as "a bank chartered under the banking laws of this state or of the United States, with its principal place of business located within the State of Arkansas. . . ." A.C.A. § 19-3-302(1) (Repl. 1994). This provision does not purport to define the word for purposes of A.C.A. § 19-8-104 or -105, or for any purpose other than as used in Act 121, which governs long-term investment of State Treasury funds and expressly gives preference to "in-state" investment of such funds. The existence of this provision, enacted during the same session as the "located" language of A.C.A. § 19-8-104(a), merely emphasizes that the General Assembly easily could have clarified its intent with respect to the deposit of other public funds if it had so wished.
The foregoing opinion, which I hereby approve, was prepared by Chief Deputy Attorney General Royce O. Griffin.
Sincerely,
WINSTON BRYANT Attorney General
WB:ROG/cyh
[1] "Public funds" is defined in A.C.A. § 19-8-101 as "any and all kinds of funds handled by treasurers, collectors, commissioners, sheriffs, and clerks." The provisions of A.C.A. §§ 19-8-101 to -107 have, however, been superseded with respect to State Treasury funds by A.C.A. §§ 19-3-201 to -223 (Repl. 1994 and as amended by Act 1236 of 1995) and19-3-301 to -309 (Repl. 1994). See Op. Att'y Gen. 95-300 (copy enclosed) in which I conclude that the bank at issue is not an eligible depository for State Treasury funds under those provisions.
[2] The law at issue in Bougas was, similarly, enacted prior to an industry development (national bank branching) that made the legislative intent questionable. The Court nonetheless applied the law as written to the industry as existing. See Bougas, 434 U.S. at 43.