The Honorable Jimmie Lou Fisher Treasurer of State 220 State Capitol Building Little Rock, Arkansas 72201
Dear Ms. Fisher:
This is in response to your request for an opinion on the following questions:
 1. Is a national bank which has relocated its head office from Texarkana, Arkansas to Texarkana, Texas and relocated its bank charter from Arkansas to the State of Texas eligible to receive deposits of State Treasury funds under the State Treasury Management Law, in particular, Arkansas Code Annotated § 19-3-208(a) and § 19-3-302(1)?
 2. If the institution is not eligible, what should be the disposition of the State Treasury funds which were deposited prior to the relocation and not yet matured?
It is my understanding that the bank at issue operates two branches within the State of Arkansas.[1]
With respect to your first question, the State Treasury Management Law, Act 12 of 1965 (1st Ex. Sess.), as amended (the "Treasury Law"), is codified at A.C.A. §§ 19-3-201 to -223 (Repl. 1994 and as amended by Act 1236 of 1995). Three provisions of the Treasury Law are relevant here. First, A.C.A. § 19-3-207(a) provides:
 Subject to the conditions and limitations provided in §§ 19-3-208 — 19-3-218, all banks in this state are designated depositories of State Treasury funds.
Second, A.C.A. § 19-3-208 provides:
 (a) The Treasurer of State may not deposit any State Treasury funds in banks located outside Arkansas unless deposits in out-of-state banks are required to be made by other law or by resolution of a state board or commission duly adopted pursuant to the authority and requirement of other law.
 (b) Nothing in this prohibition shall be applicable to funds set aside in the State Treasury and immediately required by out-of-state paying agents for the specific purpose of meeting the debt service requirements of the direct general obligation bonds of the State of Arkansas outstanding at any time.
Finally, A.C.A. § 19-3-219(a) states that certificates of deposit of "banks located in the State of Arkansas" are eligible for the investment of trust funds, and requires the Treasurer to invest a certain amount in the certificates of deposit of such banks.
The Treasury Law does not define or otherwise indicate the meaning of "banks in this state," "banks located outside Arkansas," "out-of-state banks," or "banks located in the State of Arkansas," and there are no opinions of Arkansas appellate courts interpreting any of these phrases as used in the Treasury Law.
In my opinion, a national bank having its charter address and "main office" in Texas, even though it operates one or more branches within Arkansas, is "located outside Arkansas" and is an "out-of-state bank," rather than a "bank in this state" or "bank located in the State of Arkansas" within the meaning of those phrases as used in A.C.A. §§ 19-3-207(a), -208, and -219(a), and therefore is ineligible under A.C.A. §§ 19-3-208 and -219(a) to serve as a depository of State Treasury funds, except to the limited extent set forth in A.C.A. § 19-3-208.
The Supreme Court of Arkansas has stated the fundamental rules of statutory interpretation as follows:
 The first rule in considering the meaning of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. McCoy v. Walker, 317 Ark. 86, 876 S.W.2d 252 (1994); Mountain Home Sch. Dist. v. T.M.J. Builders, Inc., 313 Ark. 661, 858 S.W.2d 74 (1993). The basic rule of statutory construction to which all other interpretive guides defer is to give effect to the intent of the legislature. McCoy, supra. In interpreting a statute and attempting to construe legislative intent, the appellate court looks to the language of the statute, the subject matter, the object to be accomplished, the purpose to be served, the remedy provided, legislative history, and other appropriate means that throw light on the subject. McCoy, supra; Gritts v. State, 315 Ark. 1, 864 S.W.2d 859 (1993).
Henson v. Fleet Mortgage Co., 319 Ark. 491, 495, 892 S.W.2d 250 (1995).
My opinion is consistent with the ordinary and accepted meanings of the words used in the statutes, particularly when one considers the historical context in which the Treasury Law was adopted. In 1965, there were no Arkansas branches of banks having charter addresses outside the state. There was at the time, therefore, no particular need for the General Assembly to be specific about what was meant by "banks in this state" or "banks located in the State of Arkansas." All banks having offices in Arkansas were either Arkansas state-chartered banks or national banks having their charter addresses in Arkansas. Even if the General Assembly had used more specific language, then, the practical result would have been the same whether the language used had referred to banks' charter addresses or to the physical location of at least one of their offices.
In my view, the legislative intent clearly was to direct deposits of State Treasury funds to certain banks so as to confer directly upon such banks, and indirectly upon their customers and shareholders, and the State of Arkansas generally, the benefits that flow from increased deposits in such banks. Those benefits might reasonably be expected to include an increase in the amount of funds available to lend locally, the resulting stimulation of the economy of the state, and increased earnings of the favored banks. It appears that the General Assembly, in distinguishing between Arkansas banks and out-of-state banks, intended to confer the benefits inherent in the Treasury Law only upon those banks that reasonably could be expected to loan or otherwise invest the deposited funds in Arkansas, thereby providing to the citizens of the state the indirect benefits contemplated by the Treasury Law.
It is not unreasonable to assume that banks with out-of-state charter addresses would generally conduct the bulk of their operations outside the state and therefore would be less likely to use deposits of State Treasury funds to confer upon Arkansas the indirect benefits contemplated by the Treasury Law. I conclude that the General Assembly intended to favor banks chartered under the laws of the state and national banks whose charter addresses are in the state.
There are other indications that my interpretation is consistent with legislative intent. First, A.C.A. § 19-3-211(a) provides, in essence, that each depository is entitled to have deposited therein an amount of Treasury Funds having the same proportion to all Treasury Funds deposited in similar accounts at all banks, as such depository's capital structure bears to the aggregate of all depository banks' capital structures. "Capital structure" is defined in A.C.A. § 19-3-302(5) (Repl. 1994), and makes no allowance, in the case of a bank operating in more than one state, for capital deployed outside the State of Arkansas. It appears that the establishment of Arkansas branches by several of the nation's largest banks would, if the existence of such branches made them Arkansas banks, entitle them to receive the bulk of all Treasury Funds deposited under A.C.A. § 19-3-211(a). Such a result would, in my view, frustrate the legislative intent underlying the Treasury Law. Arkansas Code Annotated § 19-3-211(b)(2) contains a similar provision that could lead to a similar, clearly unintended result.
In addition, A.C.A. § 19-3-302(1) defines "bank" as:
 a bank chartered under the banking laws of this state or of the United States, with its principal place of business located within the State of Arkansas, whose accounts are insured to the maximum amount authorized by law by the Federal Deposit Insurance Corporation, or similar agency of the United States.
While this definition does not purport to define the word "bank" for purposes of the Treasury Law, it was enacted as a part of Act 121 of 1973, which both enacted provisions relating to the long-term investment of State Treasury funds and amended portions of the Treasury Law. Section 11 of Act 121, codified at A.C.A. § 19-3-303 (Repl. 1994), provides that the Treasury Law applies to the matters addressed in Act 121 except to the extent inconsistent therewith. It is obvious that the General Assembly regarded the provisions of Act 121 to be closely related to the Treasury Law, and it is not inappropriate to interpret the two in a consistent manner.
I am aware that several courts have held, under federal or state laws that made a bank's location relevant to the determination of a legal question, that banks are located in jurisdictions in which they maintain branches. See Citizens Southern National Bank v. Bougas, 434 U.S. 35
(1977) (holding, under a venue provision then permitting suit in any jurisdiction where a national bank was "located," that a national bank was located in a jurisdiction where it maintained a branch); SeattleTrust Savings Bank v. Bank of California, N.A., 492 F.2d 48 (9th Cir. 1974), cert. denied, 419 U.S. 844 (1974) (holding that a bank with branches in a jurisdiction was situated in the jurisdiction for purposes of 12 U.S.C. § 36(c), permitting branching in any state in which a national bank is "situated"); Connecticut National Bank v. Iacono,785 F.Supp. 30 (D.R.I. 1992) (holding, for purposes of diversity jurisdiction, that a national bank is located in, and therefore a citizen of, a state in which it maintained branches but not its charter address); Tri-Parish Bank and Trust Co. v. City of Eunice, 343 So.2d 1121
(La.Ct.App. 3rd Cir. 1977) (implicitly holding that a bank with a branch in a jurisdiction was located there, but holding that the bank was not domiciled there).
The first three cases cited above are not, in my opinion, persuasive in the context at issue. All hold, in essence, that where certain federal
law confers a benefit or imposes a burden based upon where a national bank is located or situated, the bank should enjoy the benefit or bear the burden in all those jurisdictions where it has chosen to locate a branch office. Those cases in no way stand for the proposition that a national bank is located in the state of its branch office for purposes of a state statute intended to confer a benefit upon local banks.
Nothing in the cases suggests that a bank is located in each state where it maintains a branch for all purposes. In view of Arkansas's relatively restrictive usury limitation (see Ark. Const. art. 19, § 13), it would not be surprising for a bank with an out-of-state charter address and a branch in Arkansas to argue that it is not located in Arkansas for purposes of 12 U.S.C. § 85, which limits the interest a national bank may charge to the maximum permitted by the state where it is located, and it is not at all clear that such an argument would not prevail. SeeMarquette Nat'l Bank v. First of Omaha Service Corp., 439 U.S. 299
(1978); Wiseman v. State Bank Trust, N.A., 313 Ark. 289,854 S.W.2d 725 (1993).
Of the cases cited above, only Tri-Parish Bank interpreted a statute having as one of its purposes the local deposit of local public funds, and the decision there, under somewhat ambiguous statutory language, ultimately was favorable to the more-local banks (i.e., the banks domiciled in the jurisdiction), and adverse to the bank merely having a branch in the jurisdiction.
My opinion herein is entirely consistent with Op. Att'y Gen. 95-287 (copy enclosed), in which I opined that the bank at issue here is eligible to receive deposits of public funds under A.C.A. §§ 19-8-104(a) and -105(a) (Repl. 1994 and as amended by Act 770 of 1995). As discussed in that opinion, banks merely "doing business" in Arkansas are eligible to receive deposits of public funds under those provisions and, notwithstanding the possibility that the General Assembly may not have intended public funds to be deposited in national banks with out-of-state charter addresses, the statutory language is too clear to admit of any other interpretation. The Treasury Law, on the other hand, contains no language that compels a conclusion one way or the other, and I believe my opinion is, more likely than not, consistent with the legislative intent.
In my opinion, it is likewise clear beyond reasonable argument that a national bank having its charter address and "main office" in Texas does not have "its principal place of business located within the state of Arkansas" and is not a "bank" within the definition of the word set forth in A.C.A. § 19-3-302(1), quoted above. Under A.C.A. § 19-3-305 (Repl. 1994), State Treasury funds deposited under the provisions of A.C.A. §§19-3-301 to -309 (Repl. 1994) must be deposited "in banks and in savings and loan associations" as defined in A.C.A. § 19-3-305, and the bank at issue is therefore ineligible to receive such deposits.
Neither the Treasury Law nor A.C.A. §§ 19-3-301 to -309 provides an unequivocal answer to your second question. It is my opinion, however, that State Treasury funds that were deposited in accordance with those laws with the bank at issue prior to the relocation of its charter address may be left on deposit with the bank until maturity of the investment. With one exception not relevant here,[2] the applicable laws address the eligibility of depository institutions only at the time of the deposit, and contain no provisions requiring the withdrawal of funds held by an institution that later becomes ineligible. Absent an expression of legislative intent, it would be unreasonable, in my opinion, to interpret the statutes to require the Treasurer of State to withdraw deposits prior to maturity and thereby, in all likelihood, incur penalties under the terms of certificates of deposit or commit a breach of deposit agreements.
The foregoing opinion, which I hereby approve, was prepared by Chief Deputy Attorney General Royce O. Griffin.
Sincerely,
WINSTON BRYANT Attorney General
WB:ROG/cyh
[1] A national bank having its charter address outside the state and no offices within the state clearly is generally ineligible to receive deposits of State Treasury funds under the statutes at issue.
[2] Arkansas Code Annotated § 19-3-217(a) provides that a depository making a charge for cashing, or refusing to cash within a specified period, certain instruments, "shall immediately be discontinued as a depository. . . ."