The Honorable John H. Dawson State Representative P.O. Box 336 Camden, Arkansas 71701-0336
Dear Representative Dawson:
This opinion is being issued in response to your recent questions regarding the provisions of A.C.A. § 21-6-306, as amended by Acts 1995, No. 768. These provisions state:
21-6-306. Recorders.
 (a) The uniform fees to be charged by the recorders in the various counties in this state shall be as follows:
 (1) For recording deeds, deeds of trust, mortgages, release deeds, powers of attorney, and other recordable instruments, except as otherwise prescribed in this section, six dollars ($6.00) for one (1) page, one (1) side only, and two dollars ($2.00) for each additional page.
 (2) For filing or recording all instruments other than those prescribed in subdivision (1) of this section which are normally placed on record in the recorder's office:

 (A) Plats: when measurements exceed 8 1/2" × 14" — $12.00
 (B) Survey plats: 8 1/2" × 14" or smaller — 8.00
 (C) Materialman's lien and certificate of assessment — 8.00
 (D) Notary bond — 8.00
 (E) Foreign judgments — 8.00
 (F) Writs of garnishment or execution of garnishment — 10.00
 (G) For entering satisfaction of record, marginal — 50

(b)(1) All fees collected under this section shall be paid into the county treasury to the credit of the fund to be known as the "county recorder's cost fund".
 (2) Moneys deposited in this fund shall be appropriated and expended for the uses designated in this section by the quorum court at the direction of the recorder.
 (c)(1) All moneys collected by the recorder as a fee as provided in this section shall be used by the recorder's office to offset administrative costs.
 (2) At least twenty-five percent (25%) of the moneys collected annually shall be used to purchase, maintain, and operate an automated records system. The acquisition and update of software for the automated records system shall be a permitted use of these funds.
A.C.A. § 21-6-306.
With regard to the above-quoted statute, you have presented the following questions:
 (1) Under subdivision (b)(2) what role does the recorder have in determining the use of the funds?
 (2) What kinds of expenditures would qualify as "administrative costs"? (For example, would the salary of an employee be an administrative cost?)
 (3) May the quorum court use the funds for any purpose other than administrative costs of the recorder's office?
 (4) Is software included within the twenty-five percent referenced in subdivision (c)(2)?
RESPONSE
Question 1 — Under subdivision (b)(2) what role does the recorder have indetermining the use of the funds?
It is my opinion that under subdivision (b)(2), the recorder's role in determining the use of the funds is limited to apportioning the funds among the various administrative costs of the recorder's office, including the cost of acquiring an automated record system.
The portion of the statute that directs the use of the funds is couched in mandatory terms, stating: "All moneys collected by the recorder as a fee as provided in this section shall be used by the recorder's office to offset administrative costs. At least twenty-five percent (25%) of the moneys collected annually shallbe used to purchase, maintain, and operate an automated records system." A.C.A. § 21-6-306(c)(2) (emphasis added).See Campbell v. State, 311 Ark. 641, 846 S.W.2d 639 (1993) (Use of the term "shall" in statutory language means legislature intended mandatory compliance).
Because of the mandatory nature of the statute, I must conclude that the recorder can have no role in determining the use of the funds other than to apportion them among the various administrative costs of the recorder's office.
Therefore, the phrase "at the direction of the recorder," as used in subdivision (b)(2), simply refers, in my opinion, to the recorder's act of allocating and expending the funds for the various authorized expenses of the recorder's office, once the funds have been appropriated by the quorum court.
Question 2 — What kinds of expenditures would qualify as "administrativecosts"? (For example, would the salary of an employee be anadministrative cost?)
The phrase "administrative costs," as used in A.C.A. § 21-6-306, is not defined in the statute. In the absence of a statutory or judicial definition, the Office of the Attorney General, being a component of the executive branch of government, is not authorized to provide such a definition. See Ops. Att'y Gen. Nos. 96-142; 95-400; 95-296; 93-272. Therefore because of the lack of guidance provided in the statute with regard to the meaning of the phrase in question, I cannot opine conclusively in response to your question. The matter will ultimately have to be clarified either legislatively or judicially.
Nevertheless, in determining the proper course of action to take until such legislative or judicial clarification has been provided, it may be helpful to consider the guidance that the Arkansas Supreme Court has provided for interpreting statutory language. The court has held that in interpreting statutory language, it is appropriate to give the words their ordinary and usually accepted meaning in common language. SeeCheqnet Systems v. State Bd. of Collection Agencies, 319 Ark. 252,890 S.W.2d 595 (1995).
The ordinary and usually accepted meaning of the term "administrative" is reflected in both the Merriam-Webster Dictionary and in Black's LawDictionary. In defining the term, both dictionaries state that the term refers to "management." Black's elaborates further, stating that the term relates to "conducting, directing, or superintending the execution, application, or conduct of persons or things." Applying these definitions to the phrase "administrative costs," I must conclude that such costs, defined in this manner, are broad enough to encompass the salaries of employees of the recorder's office.
It is my opinion, therefore, that such funds may be used to fund employee salaries, assuming, of course that the salary amounts have been appropriated by the quorum court. That is, these funds may not be expended to supplement employee salaries beyond the level appropriated by the quorum court. See ARK. CONST., am. 55, § 4; A.C.A. § 14-14-801; A.C.A. §14-14-1203(a).
Question 3 — May the quorum court use the funds for any purpose otherthan administrative costs of the recorder's office?
It is my opinion that the quorum court many not use the funds for any purpose other than administrative costs of the recorder's office.
As indicated in response to Question 1, the portion of A.C.A. § 21-6-306
that directs the use of the funds is couched in mandatory terms. That is, it makes use of the term "shall." The Arkansas Supreme Court has held that the legislature's use of the term "shall" indicates its intent that compliance with the statute in which the term is used be mandatory.).See, e.g., Campbell v. State, 311 Ark. 641, 846 S.W.2d 639 (1993).
The legislature unequivocally used the term "shall" in directing that the funds referenced in A.C.A. § 21-6-306 be used to offset the administrative costs of the recorder's office. I must therefore conclude that the legislature intended that compliance with this directive be mandatory. The quorum court, therefore, may not use the funds for any purpose other than to offset the administrative costs of the recorder's office.
Question 4 — Is software included within the twenty-five percentreferenced in subdivision (c)(2)?
It is my opinion that software is included within the twenty-five percent referenced in subdivision (c)(2).
I have reached this conclusion by reading the language of subdivision (c)(2) under the first principle of statutory interpretation, which holds that statutory language must be interpreted so as to give effect to the intent of the legislature. McCoy v. Walker, 317 Ark. 86, 876 S.W.2d 252
(1994). The Arkansas Supreme Court has held that statutory interpretations must be avoided which would result in an absurdity or would defeat the plain purpose of the law. Williams v. City of PineBluff, 284 Ark. 551, 683 S.W.2d 923 (1985).
The legislature clearly intended and, indeed, mandated that twenty-five percent of the funds collected annually be applied toward the purchase, maintenance, and operation of an automated records system. The terms of the statute indicate that the twenty-five percent must be spent annually. Because the purchase of the system itself clearly will not happen annually, it must be concluded that in years subsequent to the initial purchase of the system, the twenty-five percent will necessarily be spent on maintenance and operation. It is likely that in many years, the only maintenance and operation that will be required for the system will be the acquisition and update of software for the system. For this reason, it appears that the legislature intended that the software for the system be included in the twenty-five percent. Otherwise, the twenty-five percent would not be available for the only maintenance and operation that may be required for the system. Such an interpretation would defeat the purpose of the legislature's designation of the twenty-five percent. I therefore conclude that software for the system is included in the twenty-five percent.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Suzanne Antley.
Sincerely,
WINSTON BRYANT Attorney General
WB:SBA/cyh