The Honorable Vic Snyder State Senator 324 South Valmar Little Rock, Arkansas 72205
Dear Senator Snyder:
This letter is in response to your request for an opinion regarding various issues arising out of the "Nurse Practices Act," which is codified at A.C.A. § 17-86-101 et seq., as amended by Acts 1995, No. 409. You have presented the following questions:
 (1) Does the definition of the phrase "practice of professional nursing," as set forth in A.C.A. § 17-86-102(2), include the administration of all prescription medications and treatments, or only those "where such acts require substantial specialized judgment and skill based on knowledge and application of the principles of biological, physical, and social sciences?"
 (2)(a) If the answer to Question 1 is the latter of the two options presented therein, who is to determine which acts require the additional knowledge and skill?
(b) What criteria is to be used in making that determination?
 (3) Under the provisions of A.C.A. § 17-86-102(5), may a licensed practical nurse administer prescription medications and treatments either independently of or under the supervision of, a professional (registered) nurse?
 (4) Would the answer to Question 3 be the same regardless of whether or not such acts of administration "require substantial specialized judgment and skill based on knowledge and application of the principles of biological, physical, and social sciences?"
 (5)(a) May a person, as an incidental part of his/her job, but not licensed in any of the nurse categories, administer prescription medications of any kind under the supervision of a professional (registered) nurse or a licensed practical nurse?
 (b) If so, does that supervision include the necessity for the physical presence of the supervisor?
 (6) Is a foster parent, who receives payment as such but does not receive compensation directly for administering medications, prohibited by the Nurse Practices Act from administering prescription medications to the foster child?
 (7) Is a child care or adolescent care worker, who receives payment as such but does not receive compensation directly for administering medications, prohibited by the Nurse Practices Act from administering prescription medications to a person in the child care or adolescent care program?
 (8) May a parent or guardian legally authorize a person to administer medication to his/her minor child if that person or that person's employer receives any compensation for the overall care and treatment of that child?
 (9) Would the answer to Question 8 be the same whether or not such acts of administration "require substantial specialized judgment and skill based on knowledge and application of the principles of biological, physical and social sciences?"
 (10) If the proposed Board of Nursing regulation found at Chapter 5, D, No. 3 goes into effect (prohibiting the delegation of the task of administration of medications), will it require that every prescription medication be administered by a registered nurse or by a licensed practical nurse?
RESPONSE
Question 1 — Does the definition of the phrase "practice of professionalnursing," as set forth in A.C.A. § 17-86-102(2), include theadministration of all prescription medications and treatments, or onlythose "where such acts require substantial specialized judgment and skillbased on knowledge and application of the principles of biological,physical, and social sciences?"
It is my opinion that the definition of the phrase "practice of professional nursing," as set forth in A.C.A. § 17-86-102(2) includes the administration of prescription medications and treatments only in situations where: (1) Such administration would require substantial specialized judgment and skill based on knowledge and application of the principles of biological, physical, and social sciences; (2) Such administration is carried out in exchange for compensation; and (3) Such administration is performed as a result of the fact that the person performing the administration was held out to the public as being licensed and qualified to perform the administration.
I find that three conditions must exist in order for any of the nursing activities listed in A.C.A. § 17-86-102(2) to constitute the practice of professional nursing. They are:
 (1) The circumstances under which the activity occurs must require substantial specialized judgment and skill based on knowledge and application of the principles of biological, physical, and social sciences;
(2) The activity must be carried out in exchange for compensation; and
 (3) The activity must be performed as a result of the fact that the person performing the activity was held out to the public as being licensed and qualified to perform the activity.
These conditions are derived from two sources. The first two are expressed conditions, and are derived from the language of A.C.A. §17-86-102(2), itself. The third is an implied condition, and is derived from an evaluation of the legislative intent underlying the Nurse Practices Act.
The Expressed Conditions
The two expressed conditions that must exist in order for an activity to constitute the practice of professional nursing are set forth in the definition of that phrase. The definition, in full, states:
 "Practice of professional nursing" means the performance for compensation of any acts involving the observation, care, and counsel of the ill, injured, or infirm; the maintenance of health or prevention of illness of others; the supervision and teaching of other personnel; the delegation of certain nursing practices to other personnel as set forth in regulations established by the board; or the administration of medications and treatments as prescribed by an advanced practice nurse holding a certificate of prescriptive authority, a licensed physician or licensed dentist, where such acts require substantial specialized judgment and skill based on knowledge and application of the principles of biological, physical, and social sciences.
A.C.A. § 17-86-102(2).
In interpreting the above-quoted statutory language, I am required to give the words used therein their plain meaning, in the absence of ambiguity. American Cas. Co. of Pennsylvania v. Mason, 312 Ark. 166,848 S.W.2d 392 (1993). An ambiguity exists where language is susceptible of two or more interpretations. Russelville Canning Co. v. American Can Co.,87 F. Supp. 484 (1950), rev'd on other grounds, 191 F.2d 38. In my opinion, the language quoted above is not ambiguous, not being susceptible of more than one interpretation. I therefore read the language giving it its plain meaning.
The definition set forth above lists various nursing activities. It also contains two conditions that must exist in order for these activities to constitute the practice of professional nursing. These conditions take the form of two modifying phrases — one at the beginning of the definition, and one at the end of the definition. The modifying phrase that appears at the beginning of the definition consists of the words "for compensation." The modifying phrase that appears at the end of the definition consists of the words "where such acts require substantial specialized judgment and skill based on knowledge and application of the principles of biological, physical, and social sciences." Thus, the activities listed in the definition constitute the practice of professional nursing only in situations where: (1) they are performed for compensation; and (2) they require substantial specialized judgment and skill based on knowledge and application of the principles of biological, physical, and social sciences.
Because one of the activities listed in the definition is the act of administering all prescription medications and treatments, I must conclude that the act of administering all prescription medications and treatments constitutes the practice of professional nursing in situations where the following conditions are met:
(1) The administration is performed in exchange for compensation;
 (2) The administration requires substantial specialized judgment and skill based on knowledge and application of the principles of biological, physical, and social sciences; and
(3) The administration meets the implied condition discussed below.
The Implied Condition
The implied condition that must exist in order for a nursing activity to constitute the practice of professional nursing is ascertained from a consideration of the legislative intent underlying the Nurse Practices Act. That implied condition is that the activity in question must be performed as a result of the fact that the person performing the activity was held out to the public as being licensed and qualified to perform the activity. Such a condition is consistent with what I have determined to be the purpose of the act. A consideration of that purpose is appropriate. It is well-established that the primary goal of statutory interpretation is to ascertain and give effect to the intent of the legislature. McCoy v. Walker, 317 Ark. 86, 876 S.W.2d 252 (1994). In determining legislative intent, it is appropriate to consider not only the language of the statute, but also the subject matter, the object to be accomplished, the purpose to be served, the underlying policies, the remedies provided, and the consequences of various interpretation. Kiferv. Liberty Mut. Ins. Co., 777 F.2d 1325 (8th Cir. 1985). A review of all of the provisions of the act indicates that the act's underlying intent is to prohibit unlicensed persons from holding themselves out to the public (or being held out to the public) as being licensed and qualified to perform tasks for which they are unlicensed and unqualified.
For these reasons, I conclude that the act of administering all prescription medications and treatment constitutes the practice of professional nursing if the administration occurs under circumstances in which:
(1) The administration is performed in exchange for compensation;
 (2) The administration requires substantial specialized judgment and skill based on knowledge and application of the principles of biological, physical, and social sciences; and
 (3) The administration is performed as a result of the fact that the person performing the administration was held out to the public as being licensed and qualified to perform the administration.
Question 2(a) — If the answer to Question 1 is the latter of the twooptions presented therein, who is to determine which acts require theadditional knowledge and skill?
It is my opinion that the Arkansas State Board of Nursing has the authority to determine which acts require the additional knowledge and skill described in the definition of "practice of professional nursing." I draw this conclusion from two unambiguous provisions of the Nurse Practices Act. The first is contained in A.C.A. § 17-86-203, as amended. That section sets forth the various powers and duties of the Arkansas State Board of Nursing. Among those powers and duties are the responsibilities of promulgating "whatever regulations [the board] deems necessary for the implementation of [the act];" and of "conduct[ing] disciplinary proceedings as provided for in [the act]." A.C.A. §17-86-203(1) and (16).
The other provision from which I draw my conclusion regarding the board's authority is contained in A.C.A. § 17-86-104(c), which gives the board the power to levy civil penalties for violations of the act.
Of course, because criminal violations of the act will be heard by a court, and because even civil violations of the act can be appealed to a court, the judiciary will have the ultimate word on whether a particular set of facts constitutes a violation of the act. Nevertheless, the courts will undoubtedly defer to the board's expertise on such technical matters as what types of situations require substantial specialized judgment and skill based on knowledge and application of the principles of biological, physical, and social sciences.
For these reasons, I conclude that it is the board's power and responsibility to make determinations of questions of this nature.
Question 2(b) — What criteria is to be used in making thatdetermination?
It is my opinion that when an individual is making a determination of whether a given situation requires substantial specialized judgment and skill based on knowledge and application of the principles of biological, physical, and social sciences, he or she should use the board's regulations and other guidelines (such as decisions on individual cases) in making the determination.
As to what criteria the board should use in making its determinations of such questions (i.e., in promulgating regulations and in deciding individual cases), it is my opinion that, as discussed in response to Question 2(a), the legislature has given the board the leeway to rely upon its own expertise and experience in formulating the regulations and guidelines.
Question 3 — Under the provisions of A.C.A. § 17-86-102(5), may alicensed practical nurse administer prescription medications andtreatments either independently of or under the supervision of aprofessional (registered) nurse?
It is my opinion that a licensed practical nurse may administer prescription medications and treatments only under the direction of a registered professional nurse, an advanced practice nurse, a licensed physician, or a licensed dentist, and only if the administration is of such a nature that it does not require the substantial specialized skill, judgment, and knowledge required in professional nursing.
I have, again, drawn this conclusion from the unambiguous language of A.C.A. § 17-86-102(5), which states:
 "Practice of practical nursing" means the performance for compensation of acts involving the care of the ill, injured, or infirm or the delegation of certain nursing practices to other personnel as set forth in regulations established by the board under the direction of a registered professional nurse, an advanced practice nurse, a licensed physician or a licensed dentist, which acts do not require the substantial specialized skill, judgment, and knowledge required in professional nursing;
A.C.A. § 17-86-102(5) (emphasis added).
The above-quoted language indicates that all acts performed by licensed practical nurses must be performed under the direction of one of the named personnel, and must be acts that do not require the substantial specialized skill, judgment, and knowledge required in professional nursing.
Question 4 — Would the answer to Question 3 be the same regardless ofwhether or not such acts of administration "require substantialspecialized judgment and skill based on knowledge and application of theprinciples of biological, physical, and social sciences?"
It is my opinion that a licensed practical nurse may not administer medications and treatments under circumstances that would require substantial specialized judgment and skill based on knowledge and application of the principles of biological, physical, and social sciences, regardless of whether he or she is under the direction of a registered professional nurse, an advanced practice nurse, a licensed physician, or a licensed dentist. Within the nursing profession, the performance of acts that would require substantial specialized judgment and skill based on knowledge and application of the principles of biological, physical, and social sciences, is a task that is reserved to registered professional nurses (and persons holding licenses requiring even greater qualifications). See A.C.A. § 17-86-102(2). Moreover, licensed practical nurses are explicitly limited to performing tasks that "do not require the substantial specialized skill, judgment, and knowledge required in professional nursing." See A.C.A. § 17-86-102(5).
Accordingly, I must conclude that licensed practical nurses may not administer medications in situations requiring substantial specialized judgment and skill based on knowledge and application of the principles of biological, physical, and social sciences.
Question 5(a) — May a person, as an incidental part of his/her job, butnot licensed in any of the nurse categories, administer prescriptionmedications of any kind under the supervision of a professional(registered) nurse or a licensed practical nurse?
It is my opinion that an unlicensed person may not administer prescription medications of any kind in any situation where the administration of the medication occurs as a result of the fact that the unlicensed person has been held out to the public as being licensed and qualified to administer medications. It is my opinion that this prohibition is effective even in situations where the unlicensed person is under the supervision of a licensed person.
The task of administering medications in such situations may not be delegated to unlicensed persons. See Arkansas State Board of Nursing Regulations, Chapter 5 (D)(3). This office has long held the position that unlicensed persons cannot administer medications in those situations. See Attorney General Opinion No. 74-140. I continue to hold that position.
Question 5(b) — If so, does that supervision include the necessity forthe physical presence of the supervisor?
My response to Question 5(a) obviates the necessity of an answer to Question 5(b).
Question 6 — Is a foster parent, who receives payment as such but doesnot receive compensation directly for administering medications,prohibited by the Nurse Practices Act from administering prescriptionmedications to the foster child?
It is my opinion that a foster parent is not prohibited by the Nurse Practices Act from administering prescription medications to a foster child. The fact of compensation, in and of itself, does not bring the situation into the governance of the Nurse Practices Act. As previously indicated, the act's underlying intent is to prohibit unlicensed, unqualified persons from being held out to the public as being licensed and qualified to perform certain tasks requiring a license and qualification. The relationship between a foster parent and foster child (like that existing between a parent and child) does not fall within the ambit of situations that the Nurse Practices Act was designed to prevent.
Question 7 — Is a child care or adolescent care worker, who receivespayment as such but does not receive compensation directly foradministering medications, prohibited by the Nurse Practices Act fromadministering prescription medications to a person in the child care oradolescent care program?
It is my opinion that the situation about which you have inquired would be governed by the particular facts of each such case. Numerous factors, such as whether a release has been given, the provisions of such release, the circumstances under which the child or adolescent has come within the care of the worker in question, etc., will impact upon the answer. In the absence of facts of this nature, I am unable to answer this question. However, I will note that in many instances such as you have generally described, the child care or adolescent care worker, because of the particular facts of the situation, will have legally stepped into the shoes of the parent, creating a circumstance not governed by the Nurse Practices Act.
Question 8 — May a parent or guardian legally authorize a person toadminister medication to his/her minor child if that person or thatperson's employer receives any compensation for the overall care andtreatment of that child?
It is my opinion that a parent or guardian may legally authorize another person to administer medication to his/her minor child. As in the case of foster parents and children, the relationships between parents and children or between parentally-authorized care-givers and children do not fall within the ambit of the Nurse Practices Act, because parents and parentally-authorized care-givers do not administer medication to their children as a result of having been held out to the public as being licensed and qualified to do so. The act, therefore, is not implicated by such relationships.
Question 9 — Would the answer to Questions 6, 7, or 8 be the same whetheror not such acts of administration "require substantial specializedjudgment and skill based on knowledge and application of the principlesof biological, physical and social sciences?"
My response to Questions 6, 7, and 8 would be the same whether or not such acts of administration "require substantial specialized judgment and skill based on knowledge and application of the principles of biological, physical and social sciences." As previously indicated, in order for the Nurse Practices Act to be applicable to a particular act of administration of medication, the administration in question must occur as a result of the person performing the administration having been held out to the public as being licensed and qualified to perform the act of administration.
Question 10 — If the proposed Board of Nursing regulation found atChapter 5, Paragraph D, No. 3 goes into effect (prohibiting thedelegation of the task of administration of medications), will it requirethat every prescription medication be administered by a registered nurseor by a licensed practical nurse?
It is my opinion that under the Board of Nursing Regulations, Chapter 5 (D)(3), which has now gone into effect, every prescription medication must be administered, in situations governed by the Nurse Practices Act, by a registered professional nurse or a licensed practical nurse (or by a person holding a license requiring even greater qualifications).
A registered professional nurse must administer prescription medications in situations where:
 (1) The administration of the medication occurs under circumstances requiring substantial specialized judgment and skill based on knowledge and application of the principles of biological, physical and social sciences;
 (2) The act of administering the medication is performed in exchange for compensation; and
 (3) The act of administration of the medication occurs as a result of the performer of the act having been held out to the public as being licensed and qualified to perform the act.
A licensed practical nurse must administer prescription medications (under the direction of a registered professional nurse, an advanced practice nurse, a licensed physician, or a licensed dentist) in situations not requiring substantial specialized judgment and skill based on knowledge and application of the principles of biological, physical and social sciences, but in which:
 (1) The act of administering the medication is performed in exchange for compensation; and
 (2) The act of administration of the medication occurs as a result of the performer of the act having been held out to the public as being licensed and qualified to perform the act.
It is my opinion therefore that the Board of Nursing Regulations, Chapter 5 (D)(3) will operate to prohibit any unlicensed person from administering prescription medications in situations governed by the Nurse Practices Act.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Suzanne Antley.
Sincerely,
WINSTON BRYANT Attorney General
WB:SBA/cyh