Cite as 2022 Ark. 218

# SUPREME COURT OF ARKANSAS

No. CV–22–138

| | |
|---|---|
| | **Opinion Delivered** December 8, 2022 |
| RICKY HENDRIX, INDIVIDUALLY AND ON BEHALF OF ALL ARKANSANS SIMILARLY SITUATED<br>APPELLANTS | |
| | APPEAL FROM THE POPE COUNTY CIRCUIT COURT [NO. 58CV-17-499] |
| V. | |
| MUNICIPAL HEALTH BENEFIT FUND | HONORABLE KEN D. COKER, JR., JUDGE |
| APPELLEE | |
| | AFFIRMED. |

**KAREN R. BAKER, Associate Justice**

Appellant Ricky Hendrix, individually and on behalf of all Arkansans similarly situated, appeals the Pope County Circuit Court's order granting summary judgment in favor of appellee Municipal Health Benefit Fund (the "Fund"). Pursuant to Rule 1-2(a)(7) of the Arkansas Supreme Court Rules, we have jurisdiction over the present appeal because it is a subsequent appeal following an appeal previously decided by this court. *See Mun. Health Benefit Fund v. Hendrix*, 2020 Ark. 235, 602 S.W.3d 101 (*Hendrix I*). Hendrix presents two arguments on appeal: (1) summary judgment in favor of the Fund was error and should be reversed; and (2) summary judgment in favor of Hendrix should have been granted and the case should be remanded for a damages determination. We affirm.

As set forth in *Hendrix I*, the Fund is a trust created by the Arkansas Municipal League under authority of the Interlocal Cooperation Act, Arkansas Code Annotated sections 25-

20-101 through -108 (Repl. 2014 & Supp. 2021). The Fund provides benefits to employees of its municipal members. The Fund's Policy Booklet[1] sets forth the benefits available and the Fund's rights and obligations with respect to payment of those benefits. Through Hendrix's employment with the Russellville Police Department, he obtained Fund health-benefits coverage. In May 2016, Hendrix's daughter was injured in a car accident, which required treatment from various medical providers. The Fund denied payment for portions of Hendrix's daughter's medical bills based on its interpretation of the uniform, customary, and reasonable charges (UCR) exclusion in the Policy Booklet. Hendrix filed a class-action complaint against the Fund challenging the enforcement of the UCR term due to the Policy Booklet's subjective and ambiguous standards for determining the UCR rate. Hendrix alleged that the Policy Booklet was a contract between the Fund and the class members and that the UCR term's ambiguity rendered it unenforceable. On June 26, 2019, the circuit court granted Hendrix's motion for certification of the following UCR class:

> All individuals and/or entities located and/or domiciled within the State of Arkansas who filed one or more claims with the Arkansas Municipal Health Benefit Fund on or between September 12, 2012 through the date of entry of this Class Certification Order and who had their claim(s) denied or reduced by the MHBF, in whole or in part, on the stated basis that the charges claimed exceed those that are "reasonable and customary."

In *Hendrix I*, the Fund appealed the circuit court's grant of class certification. We affirmed.[2]

---

[1]The Booklet is at times referred to in the record as the Fund Booklet; for clarity, it will be referred to as the Policy Booklet.

[2]In *Hendrix I*, we affirmed the certification of a second class based on a separate exclusionary term regarding automobile insurance coverage. However, after *Hendrix I*, this

On April 14, 2021, Hendrix filed a motion for summary judgment. Hendrix asserted the two remaining questions are as follows: (1) Is the UCR exclusion drafted and employed by the Fund subject to ambiguity or more than one reasonable interpretation, and thus subject to be construed, strictly or otherwise, in favor of the class as unenforceable under Arkansas law? And (2) If yes, what are the amount of damages owed by the Fund to the UCR class for common law breach of its health coverage contract with the UCR class?[3] Hendrix argued that the UCR provisions contained in the Policy Booklet are contradictory because they are based on different standards. The first provision states,

> **Usual, Customary and Reasonable Charges (UCR)** To determine UCR charges billed by a medical provider for services and supplies, the Fund reserves the right to use national tables (including, but not limited to, RBRVS, ADP and MDR, Medispan, First Databank) and methods in accordance with health care industry standards.

The next sentence reads,

> The Fund may set limits on a provider's charges and fees at its discretion without giving notice to the provider.

Hendrix took issue with these provisions because the first purported to tether application of the UCR exclusion to some unspecified "national table(s), method(s), or standards(s)"; and in the second provision, the Fund grants itself unfettered freedom to unilaterally exclude any provider charges, without notice, at any time. Hendrix pointed out

claim was dismissed pursuant to the circuit court's approval of a settlement between the Fund and the class. Therefore, the remaining class is the UCR class.

[3] In his motion, Hendrix asserted that the health benefits sold to the UCR class were insurance. However, as will be addressed below, the circuit court specifically rejected this argument. Hendrix does not challenge this finding on appeal.

that the Policy Booklet then set forth a third standard that is equally subjective and ambiguous:

> Covered Medical Charges include only the charges and fees described below that . . . (d) do not exceed the usual, customary and reasonable charges as determined by the Fund in accordance with health care industry standards for the area in which the services and supplies are furnished[.]

Hendrix argued that with this final clause, the Policy Booklet purports to limit the Fund's obligation to pay for otherwise covered medical charges to the extent that the Fund "determines" that they are not UCR utilizing the health care industry standards "of the area" where the care is provided. Hendrix argued that the class was entitled to summary judgment on its claims because the UCR exclusion is both internally contradictory and ambiguous and thus not enforceable under Arkansas contract law. Hendrix also argued that the UCR exclusion violated the contractual requirement of mutuality. He asserted that the lack of mutuality provided an independent basis for requiring entry of summary judgment in his favor.

On May 24, 2021, the Fund responded to Hendrix's motion for summary judgment and also moved for summary judgment. In support of its motion for summary judgment, the Fund argued that it is indisputable that the Fund is a trust and that there is no cause of action in Hendrix's complaint that seeks to confront the Fund as a trust. Specifically, the Fund argues that Hendrix has made no breach-of-fiduciary-duty claim, no allegation that the Fund wrongfully calculated a claim, failed to pay the UCR amount for any out-of-network claim or engaged in any wrongful or bad faith conduct in the coordination of benefits.

4

To support its position, the Fund relied on the affidavit and exhibits attached thereto of Mark Hayes, executive director of the Arkansas Municipal League. The Fund asserted that the following material facts support its position: The Fund was established through the execution of a declaration of trust on November 16, 1981 (the "Trust") by member municipalities in order to provide, among other services, "health and dental benefits coverage for the benefit of member municipalities and their employees and officials."

The Fund also relied on the affidavit and exhibits attached of Katie Bodenhamer, general manager and benefits counsel for the Fund. Bodenhamer stated that the Trust for the Fund authorizes the trustees to promulgate rules and regulations for the operation of the Fund. She explained that the rules and regulations promulgated by the trustees are set forth in the Policy Booklet. Bodenhamer stated that the Fund has a fiduciary obligation to the member municipalities and former and current employees and elected officials who participate in the Fund. Part of this fiduciary obligation is to manage the Fund assets, including the payment of claims, in order to keep premiums paid by municipalities low and to allow the Fund to provide the best benefits possible to the beneficiaries. Bodenhamer observed that billed charges received by the Fund for out–of–network claims vary widely for the same claim by provider and are far from bearing any relation to actual market prices for the claim. The UCR provision is a standard industry provision in health-benefits funds and insurance policies that explains the limit of the benefit provided for out-of-network claims.

On June 28, 2021, Hendrix filed his consolidated reply in support of his motion for summary judgment and response in opposition of the Fund's countermotion for summary

5

judgment. Hendrix argued that the Fund raised straw-man arguments involving the interpretation of internal trust documents, how other insurers define UCR terms, and rising trends in billed charge rates across the country. Hendrix argued that none of these arguments bear on whether the UCR term at issue in this case is objectively ascertainable or ambiguous and thus enforceable or unenforceable on the face of this Policy Booklet. Hendrix again asserted that the Policy Booklet is a contract between the Fund and the class. Additionally, Hendrix argued that the Fund's status as a trust is irrelevant to whether the Booklet is a contract.

On November 10, 2021, the circuit court issued a letter order granting the Fund's motion for summary judgment, denying Hendrix's motion for summary judgment, and dismissing Hendrix's complaint. The circuit court found that there were no genuine issues of material fact and that the health benefits offered by the Fund and purchased by Hendrix are not an insurance policy. The circuit court found that while it is uncontroverted that the Fund is a trust, the existence of the trust relationship did not preclude the Fund and Hendrix from entering into contracts with one another. The circuit court then found that the Policy Booklet at issue is a contract between the UCR class members and the Fund. Further, the circuit court rejected Hendrix's claim that the terms of the Policy Booklet contract are ambiguous and contradictory regarding the definition of the UCR term. The circuit court found that it is permissible for a contract term to leave a decision to the discretion of one party, and when that occurs, that decision is virtually unreviewable unless the decision is made in bad faith. The circuit court found that there were no allegations of bad faith in this

case. The circuit court granted the Fund's motion for summary judgment and denied Hendrix's motion for summary judgment.

On November 30, 2021, the circuit court entered its final order. The order came to the same conclusions as the letter order but also concluded that there is sufficient consideration from the Fund in the contract between the parties. Therefore, Hendrix received valid consideration from the Fund such that mutuality of obligation was not essential. Hendrix appealed.

*Standard of Review*

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Ark. R. Civ. P. 56(c). Ordinarily, on appeal from a summary-judgment disposition, the evidence is viewed in the light most favorable to the party resisting the motion, and any doubts and inferences are resolved against the moving party. *Abraham v. Beck*, 2015 Ark. 80, 456 S.W.3d 744. However, when the parties agree on the facts, we simply determine whether the appellee was entitled to judgment as a matter of law. *Id.* When parties file cross-motions for summary judgment, as was done in this case on this point, they essentially agree that there are no material facts remaining, and summary judgment is an appropriate means of resolving the case. *Id.* As to issues of law presented, our review is de novo. *Id.*

7

*Law and Analysis*

On appeal, Hendrix argues that the circuit court erred in granting summary judgment in favor of the Fund. The crux of Hendrix's claim is that while the Fund is a trust, it may enter into contracts, such as the Policy Booklet at issue. The Fund responds that while the circuit court correctly granted summary judgment in its favor, the circuit court did so for the wrong reasons. The Fund takes issue with the circuit court's finding that "the existence of the trust relationship does not in any way preclude the [Fund] and the Class Members from entering into contracts with one-another." The Fund claims that such a dismissal of a trust relationship has no support in the law, and that relationship must be recognized and given effect. Hendrix counters that the Fund is prohibited from making this argument because it did not file a cross-appeal on this issue. We disagree. We have said as follows:

> Our case law is well settled that when an appellee seeks something more than he or she received in the lower court, a notice of cross appeal is necessary to give us jurisdiction of the cross appeal. Ark. R. App. P.–Civ. 3(d) (2004); *Boothe v. Boothe*, 341 Ark. 381, 17 S.W.3d 464 (2000); *Brown v. Minor*, 305 Ark. 556, 810 S.W.2d 334 (1991). In other words, a notice of cross appeal is required when the appellee seeks affirmative relief that was not obtained in the lower court. *See City of Marion v. Baioni*, 312 Ark. 423, 850 S.W.2d 1 (1993); *Edwards v. Neuse*, 312 Ark. 302, 849 S.W.2d 479 (1993); *Pledger v. Illinois Tool Works, Inc.*, 306 Ark. 134, 812 S.W.2d 101 (1991); *Egg City of Arkansas, Inc. v. Rushing*, 304 Ark. 562, 803 S.W.2d 920 (1991); *Elcare, Inc. v. Gocio*, 267 Ark. 605, 593 S.W.2d 159 (1980); *Moose v. Gregory*, 267 Ark. 86, 590 S.W.2d 662 (1979).
>
> In contrast, a notice of cross appeal is not necessary when the appellee is not seeking affirmative relief on appeal. *Hasha v. City of Fayetteville*, 311 Ark. 460, 845 S.W.2d 500 (1993). For example, despite the absence of a notice of cross appeal, we will address the appellee's additional points on appeal that explain why the lower court erred in its reasoning but reached the right result. *Independence Federal Savings & Loan Ass'n v. Davis*, 278 Ark. 387, 646 S.W.2d 336 (1983) (supplemental opinion denying rehearing).

*Hoffman v. Gregory*, 361 Ark. 73, 80–81, 204 S.W.3d 541, 547 (2005), *overruled on other grounds by Poff v. Peedin*, 2010 Ark. 136, 366 S.W.3d 347.[4]

Having determined that the Fund may make this argument on appeal, we now turn to the specific arguments on appeal. Hendrix admits that the Fund is a trust, but he alleged a breach-of-contract claim based on his position that the Policy Booklet is a separate contract into which the parties entered. Hendrix notes that the Policy Booklet refers to itself as a contract. In contrast, the Fund's position is that Hendrix failed to challenge the trust or any duty under the trust and that the dismissal of his claims must therefore be affirmed because of the uncontroverted existence of the trust relationship. Further, the Fund contends that Hendrix offered no evidence that would allow a fiduciary relationship to transform into a contractual relationship. We agree with the Fund, and while the circuit court correctly

---

[4]Hendrix acknowledges the long line of cases stating that a cross-appeal is not necessary when the appellee is not seeking affirmative relief on appeal. However, Hendrix argues that we did just the opposite in *Reed v. Arvis Harper Bail Bonds, Inc.*, 2010 Ark. 338, 368 S.W.3d 69. We find *Reed* distinguishable. In *Reed*, the Arkansas Professional Bail Bond Licensing Board suspended Arvis Harper's license. Arvis Harper filed a complaint for judicial review in the circuit court. Although the circuit court found that the Board's findings were consistent with its rules and regulations, were not based on unlawful procedure, and were supported by substantial evidence, the circuit court reversed the decision of the Board finding that the statute establishing the Board violated the separation-of-powers doctrine. On appeal, we explained that Arvis Harper's constitutional challenge was not appropriately brought by a direct action. It was presented as an argument in an appeal to a decision by the Board, which is governed by the Administrative Procedure Act. We noted that Arvis Harper challenged the Board's decision on other grounds that the circuit court did not find—such as unlawful procedure, violation of substantive due process, violation of equal protection, and lack of substantial evidence. We declined to address these arguments due to Arvis Harper's failure to file a cross-appeal, explaining that Arvis Harper was seeking affirmative relief that was not granted in the circuit court. Further, because *Reed* involved the unique procedural posture of an appeal of an agency decision, we do not find it applicable to the present case. Instead, we apply the principle set forth in the cases above, and despite the absence of a cross-appeal, we will address the Fund's trust argument.

granted summary judgment in favor of the Fund, we hold that it did so for the wrong reasons.

Under the Declaration of Trust, Hendrix is clearly a beneficiary of the Trust as the Trust was created for the purpose of providing health-benefits coverage to member employees. While Hendrix attempts to bring a breach-of-contract claim based on the Policy Booklet, a close review of the Declaration of Trust and Policy Booklet leads us to conclude that Hendrix's claim is a challenge to the actions of the trustees.

To support its position, the Fund relies on Restatement (Second) of Trusts, which we have followed when reviewing trust cases in Arkansas. *Wisener v. Burns*, 345 Ark. 84, 89, 44 S.W.3d 289, 292 (2001) (citing *McPherson v. McPherson*, 258 Ark. 257, 523 S.W.2d 623 (1975)). The Restatement provides:

> b. Breach of contract. A trustee who fails to perform his duties as trustee is not liable to the beneficiary for breach of contract in the common-law actions of special assumpsit or covenant or in a similar action at law in States in which the common-law forms of action have been abolished. The creation of a trust is conceived of as a conveyance of the beneficial interest in the trust property rather than as a contract. Moreover, questions of the administration of trusts have always been regarded as of a kind which can adequately be dealt with in a suit in equity rather than in an action at law, where questions of fact would be determined by a jury and not by the court. The mere fact that there may happen to be a promise in words by the trustee to perform the trust does not give the common-law courts concurrent jurisdiction over the administration of the trust.

Restatement (Second) of Trusts § 197 (1959). The Restatement goes on to state that "[t]he trustee by accepting the trust and agreeing to perform his duties as trustee does not make a contract to perform the trust enforceable in an action at law. *The trustee may by contract undertake other duties than those which he undertakes as trustee, and if he does so he will be liable in an action at law for failure to perform such duties.*" (Emphasis added.)

10

The Fund also relies on American Jurisprudence, Second Edition discussing the distinction between trusts and contracts as follows:

Trusts are distinguishable from contracts in that the parties to a contract may decide to exchange promises, but a trust does not rest on an exchange of promises and instead merely requires a trustor to transfer a beneficial interest in property to a trustee who, under the trust instrument, relevant statutes, and common law, holds that interest for the beneficiary. The undertaking between the settlor and trustee is not properly characterized as contractual and does not stem from the premise of mutual assent to an exchange of promises. Although the trustee's duties may derive from the trust instrument, they initially stem from the special nature of the relation between trustee and beneficiary, and thus, the trustee's undertakings or promises in a trust instrument are normally not contractual. A trust is also distinguishable from a contract in that a trust is a fiduciary relationship with respect to property. The relation ordinarily created by a contract is that of promisor and promisee, obligor and obligee, or debtor and creditor; in most contracts of hire, a special confidence is reposed in each other by the parties, but more than that is required to establish a fiduciary relation. An essential aspect of a trust is that the putative trustee has received property under conditions that impose a fiduciary duty to the grantor or a third person; a mere contractual obligation, including a contractual promise to convey property, does not create a trust. One of the major distinctions between a trust and contract is that in a trust, there is always a divided ownership of property, the trustee having usually a legal title and the beneficiary an equitable one, whereas in contract, this element of division of property interest is entirely lacking.

76 Am. Jur. 2d *Trusts* § 12 (2019).

As set forth above, a trustee's duties to the beneficiaries are normally not contractual. However, as explained in the Restatement, a trustee can contractually undertake duties other than those which he undertakes as trustee, and if he does so, he will be liable in an action at law for failure to perform such duties. That is not the case here. Pursuant to Bodenhamer's affidavit and the Declaration of Trust, the trustees are expressly permitted to promulgate rules and regulations as may be proper or necessary for the sound and efficient administration of the Trust. As Bodenhamer stated, the rules and regulations promulgated by the trustees are set forth in the Policy Booklet. Here, the Declaration of Trust expressly

11

permitted the trustees to promulgate the rules and regulations set forth in the Policy Booklet; thus, they did not undertake other duties as contemplated by the Restatement. Stated differently, the trustees' duties are to provide health-benefits coverage, and these duties are governed by rules and regulations contained in the Policy Booklet. Therefore, the trustee/beneficiary relationship remained intact and did not transform into a contractual relationship. In fact, because the trustees were expressly permitted to adopt the rules and regulations contained in the Policy Booklet, the Policy Booklet is not a separate contract but a mere extension of the Trust.

Because Hendrix claimed breach of contract rather than breach of trust or breach of fiduciary duty against the trustees, we hold that he failed to state a proper claim. We have said that if a circuit court's grant of summary judgment was not in error, we can affirm the judgment as reaching the right result for the wrong reason. *Middleton v. Lockhart*, 355 Ark. 434, 139 S.W.3d 500 (2003). Therefore, we hold that while it did so for the wrong reasons, the circuit court correctly granted summary judgment in favor of the Fund. Having found that the circuit court properly granted summary judgment in favor of the Fund, we need not address Hendrix's second argument on appeal.

Affirmed.

*Streett Law Firm, P.A.*, by: *James A. Streett*; and *Brian G. Brooks, Attorney at Law, PLLC*, by: *Brian G. Brooks*, for appellant.

*Harrington, Miller, Kieklak, Eichmann & Brown, P.A.*, by: *R. Justin Eichmann* and *Thomas N. Kieklak*; and *Catlett Law Firm, PLLC*, by: *H. Bradley Walker*, for appellee.

12