Cite as 2024 Ark. 31

# SUPREME COURT OF ARKANSAS
**No.** CV–23–450

|  |  |
|---|---|
| | **Opinion Delivered:** March 28, 2024 |
| ARKANSAS DEPARTMENT OF FINANCE AND ADMINISTRATION<br>APPELLANT | |
| V. | APPEAL FROM THE JEFFERSON COUNTY CIRCUIT COURT [NOS. 35CV-22-238, 35CV-22-240] |
| TROTTER FORD, INC.; AND TROTTER AUTO, INC., D/B/A TROTTER TOYOTA<br>APPELLEES | HONORABLE JODI RAINES DENNIS, JUDGE |
| | REVERSED AND REMANDED. |

**KAREN R. BAKER, Associate Justice**

Appellant, the Arkansas Department of Finance and Administration (ADFA), appeals from two orders entered by the Jefferson County Circuit Court granting motions for summary judgment filed by the appellees, Trotter Ford, Inc., and Trotter Auto, Inc., d/b/a Trotter Toyota (hereinafter referred to individually as "Trotter Ford" and "Trotter Auto," respectively, and referred to collectively as "Trotter"), and denying ADFA's motions for summary judgment and motions to strike Trotter's summary-judgment evidence. ADFA presents two points on appeal: (1) the circuit court erroneously granted Trotter's motions for summary judgment; and (2) the circuit court applied the wrong standard of review in considering Trotter's motions for summary judgment. Our jurisdiction is pursuant to Arkansas Supreme Court Rule 1-2(a)(8) (this court required by law to hear appeal) and Arkansas Code Annotated section 26-18-406(c)(2). We reverse and remand.

## I. *Facts and Procedural History*

Trotter Ford and Trotter Auto are vehicle dealerships located in Pine Bluff. On January 19, 2021, ADFA's Office of Field Audit began conducting routine audits of both dealerships, covering the period of July 1, 2015, to December 31, 2020, to determine whether they had complied with Arkansas law concerning the remittance of state sales and use tax. The audits revealed discrepancies in Trotter's sales tax records, and on August 9, 2021, ADFA issued notices of proposed assessment to both Trotter Ford and Trotter Auto. ADFA found that Trotter Ford had assigned vehicles with dealer license tags to James Bowlin, Jr., its parts service director; Shari Raymick, its office manager; and Ann Trotter Nelson, the owner's daughter; and that Trotter Auto had assigned a vehicle with dealer license tags to Tammy Harper, the general manager's wife. Further, ADFA found that these individuals did not qualify as authorized users for dealer tags under Motor Vehicle Rule 2005-7. *See* Code Ark. R. 006.05.406; *see also* Ark. Code Ann.§ 27-14-1704 (Supp. 2021). ADFA determined that the assignment and use of the vehicles constituted "withdrawals from stock" requiring the payment of gross receipts tax ("sales tax") pursuant to Arkansas Code Annotated section 26-52-322(a) (Repl. 2020).

On August 12, 2021, Trotter paid the assessed taxes and interest, and on August 19, it formally protested ADFA's assessments. On December 7, ADFA's Office of Hearings and Appeals held a consolidated administrative hearing on the assessment of sales tax against Trotter Ford and Trotter Auto for the use of the four vehicles at issue. On March 11, 2022, the administrative law judge issued decisions sustaining ADFA's assessments. ADFA subsequently issued notices of final assessment to Trotter Ford and Trotter Auto.

On April 4, 2022, Trotter filed petitions for review on behalf of each dealership seeking relief under the Administrative Procedure Act.[1] On May 6, ADFA filed separate motions to dismiss the petitions for a lack of subject matter jurisdiction wherein it alleged, in pertinent part, that the decision of the administrative law judge from which Trotter appealed was issued pursuant to the Arkansas Tax Procedure Act ("TPA") and that the provisions of the Administrative Procedure Act were not applicable to tax assessments. Trotter subsequently filed amended and substituted complaints seeking judicial relief from the administrative decision and a refund of its payment of the assessed taxes and interest pursuant to the TPA, specifically Arkansas Code Annotated section 26–18–406 (Repl. 2020). On May 27, ADFA filed answers to the complaints for judicial relief.

On September 9, 2022, Trotter filed motions for summary judgment on behalf of both dealerships, which were accompanied by affidavits of Henry Ford Trotter III, president of Trotter Ford and Trotter Auto; the administrative decision sustaining ADFA's tax assessments; ADFA's notices of final assessment that were issued to the respective dealerships; and documentation purporting to evidence the sale of the four vehicles at issue. Trotter conceded to the misuse of dealer license tags and argued that ADFA should have imposed a fine pursuant to Arkansas Code Annotated section 27-14-1704 as opposed to finding that the vehicles had been "withdrawn from stock" and assessing sales tax pursuant to section 26-52-322. Trotter asserted that no sale had taken place to which the imposition of sales tax

---

[1]This appeal involves two parallel cases filed in the Jefferson County Circuit Court. Trotter Ford filed a petition for review in *Trotter Ford, Inc. v. Arkansas Department of Finance and Administration*, Case No. 35CV-22-238. Trotter Auto filed a petition in *Trotter Auto, Inc., d/b/a Trotter Toyota v. Arkansas Department of Finance and Administration*, Case No. 35CV-22-240.

would apply and noted that the vehicles remained available for sale at all times before eventually being sold to consumers.

On October 14, 2022, ADFA filed motions to strike Trotter's summary-judgment evidence, alleging, in pertinent part, that the decision of the administrative law judge was irrelevant in light of the de novo standard of review. Trotter responded that a de novo review does not require the circuit court to completely disregard the administrative decision, but rather, it simply means that no deference should be afforded to the decision on review.

On January 6, 2023, ADFA filed motions for summary judgment against both dealerships. ADFA asserted that it was entitled to judgment as a matter of law because the undisputed facts demonstrated that Trotter Ford and Trotter Auto were established businesses; the four vehicles at issue constituted tangible personal property; the vehicles had been withdrawn from stock pursuant to Arkansas Code Annotated section 26-52-322 when the vehicles were used by the assigned drivers; and each withdrawal from stock was a taxable event. ADFA further argued that Trotter could not show, nor had it alleged, that the withdrawals from stock were exempt from sales tax.

On February 13, 2023, the circuit court held a consolidated hearing on the competing motions for summary judgment. On March 9, the circuit court entered an order granting Trotter's motions for summary judgment and reversing ADFA's assessments. The circuit court reasoned that

> [ADFA's] decision to impose a sales tax under the facts in this matter was a new and creative interpretation of tax law. In order for [ADFA] to impose the sales tax as they have on Trotter, they ignored A.C.A. § 26-52-510, governing the payment of sales tax on motor vehicles. This statute requires a consumer to pay the sales tax on the purchase of a motor vehicle on or before the time for registration, which is no more than thirty days from the transfer

4

of title. The sales tax on the sale of new automobiles is collected from the buyer at the time the automobile license is issued . . . Applying the facts to this statu[t]e no tax has accrued because no title was transferred and no application for a license has been sought.

A specific statute like A.C.A. § 26-52-510 takes precedence over a general statute like A.C.A. § 26-52-322.

. . . .

Providing the use of an automobile to an employee or the employee's family falls within the category of a fringe benefit. Specific tax laws govern the assessment of income tax on fringe benefits. A specific statute has been enacted providing for the assessment of penalties to car dealers who allow the unauthorized use of dealer tags.

The circuit court held that ADFA had substituted a general sales tax statute for the specific statute and that ADFA's decision to assess taxes pursuant to section 26-52-322 was not supported by a preponderance of the evidence. On March 20, ADFA filed a letter with the circuit court requesting that an order be entered on ADFA's outstanding motions, including its competing motions for summary judgment and motions to strike Trotter's summary-judgment evidence. On April 3, the circuit court entered an order denying ADFA's motions for summary judgment and ruling further that the motions to strike had been rendered moot at the February 13 hearing because the parties advised the circuit court that there were no outstanding issues of material fact.

ADFA timely appealed from the circuit court's orders in both cases, and on September 14, 2023, we granted ADFA's unopposed motions to consolidate the appeals.

5

II. *Points on Appeal*

A. Summary Judgment

Turning to the points on appeal, ADFA asserts that the circuit court erroneously granted Trotter's motions for summary judgment. This argument is two-fold. First, ADFA contends that the use of the vehicles in Trotter's inventory was subject to sales tax based on the plain language of Arkansas Code Annotated section 26-52-322. Second, ADFA asserts that the circuit court erred in finding that ADFA had not met its burden of proof regarding Trotter's sales tax liability and determining that the use of the vehicles was not a taxable transaction.

This court reviews a circuit court's decision in a tax case de novo. *Douglas Cos. Inc. v. Walther*, 2020 Ark. 365, at 5, 609 S.W.3d 397, 400. Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Ark. R. Civ. P. 56(c). Ordinarily, on appeal from a summary-judgment disposition, the evidence is viewed in the light most favorable to the party resisting the motion, and any doubts and inferences are resolved against the moving party. *Hendrix v. Mun. Health Benefit Fund*, 2022 Ark. 218, at 7, 655 S.W.3d 678, 682–83. However, when the parties agree on the facts, we simply determine whether the appellee was entitled to judgment as a matter of law. *Id*. When parties file cross-motions for summary judgment, as was done in this case, they essentially agree that there are no material facts remaining, and summary judgment is an appropriate means of resolving the case. *Id*.

## 1. *Ark. Code Ann. § 26-52-322*

ADFA contends that the use of the vehicles in Trotter's inventory was subject to sales tax based on the plain language of Arkansas Code Annotated section 26-52-322, which provides, in pertinent part:

> (a) As used in this section, "withdrawal from stock" means the withdrawal or use of goods, wares, merchandise, or tangible personal property[2] from an established business or from the stock in trade of the established reserves of an established business for consumption or use in the established business[3] or by any other person.

> (b)(1) The gross receipts tax levied by this chapter and the compensating use tax levied by the Arkansas Compensating Tax Act of 1949, § 26-53-101 et seq., are levied on a withdrawal from stock.

Ark. Code Ann. § 26-52-322(a)–(b)(1).

It is undisputed that Trotter Ford and Trotter Auto are established businesses; the vehicles in question are tangible personal property; and the vehicles were in Trotter's inventory at the time of their use. Therefore, the narrow issue before us is whether the use of the vehicles constitutes "use" within the meaning of "withdrawal from stock" under section 26-52-322(a). ADFA asserts that the four vehicles that Trotter assigned to its employees and their family members were withdrawn from stock because they were used as any person would use a vehicle, according to the commonly understood meaning of the word, and Trotter was therefore obligated to remit sales tax. Alternatively, relying on *Weiss*

---

[2]"Tangible personal property" is defined as personal property that can be seen, weighed, measured, felt, or touched or that is in any other manner perceptible to the senses *See* Ark. Code Ann. § 26-52-103(35)(A) (Repl. 2020).

[3]"Established business" refers to any business operated or conducted by any person in a continuous manner for any length of time from an established place or in an established manner. *See* Ark. Code Ann. § 26-52-103(16).

*v. Central Flying Services, Inc.*, 326 Ark. 685, 934 S.W.2d 211 (1996), ADFA argues that the legislature intended for a sales tax to be imposed on items in a business's stock that are used by any person, irrespective of any subsequent sale of the items used. Relying on case law from other jurisdictions, Trotter responds that "withdrawal from stock" requires consumption. Trotter contends that the vehicles were therefore not withdrawn from stock until they were ultimately sold to consumers because they remained available for sale in its inventories during all relevant periods.

We review issues of statutory interpretation de novo, as it is for this court to determine the meaning of a statute. *Davis v. PennyMac Loan Servs., LLC*, 2020 Ark. 180, at 3–4, 599 S.W.3d 128, 130–31. The cardinal rule of statutory construction is to construe the statute just as it reads, giving the words their ordinary and usually accepted meaning in common language. *McMillan v. Live Nation Ent., Inc.*, 2012 Ark. 166, 4, 401 S.W.3d 473, 476. When the language of the statute is plain and unambiguous, and conveys a clear and definite meaning, there is no need to resort to rules of statutory interpretation. *Id.* In other words, when the language of the statute is not ambiguous, the analysis need not go further, and we will not search for legislative intent; rather, the intent is gathered from the plain meaning of the language used. *Yamaha Motor Corp., U.S.A. v. Richard's Honda Yamaha*, 344 Ark. 44, 52, 38 S.W.3d 356, 360 (2001).

Here, the language employed by the legislature is so plain and unambiguous that judicial construction is limited to what was said.[4] The plain language of section 26-52-322

---

[4]The dissenters urge us to bypass the plain language of Arkansas Code Annotated section 26-52-322 as though it were ambiguous. While it is true that the basic rule of statutory construction is to give effect to the intent of the legislature, we do so by first giving

provides that a taxable event is triggered by the "*withdrawal or use* of . . . tangible personal property from an established business or from the stock in trade of the established reserves of an established business for *consumption or use* in the established business or by any other person." Ark. Code Ann. § 26-52-322(a) (emphasis added).[5] We have explained that "[i]n its ordinary sense the word 'or' is a disjunctive particle that marks an alternative, generally corresponding to 'either,' as 'either this or that'; it is a connective that *marks an alternative*." *McCoy v. Walker*, 317 Ark. 86, 89, 876 S.W.2d 252, 254 (1994) (quoting *Beasley v. Parnell*, 177 Ark. 912, 918, 9 S.W.2d 10, 12 (1928)) (emphasis in original). Thus, contrary to Trotter's arguments, the statute does not require a permanent withdrawal from stock or consumption of the property at issue, and the rules of statutory construction do not permit us to read into it words that are not there. *See McMillan*, *supra*. Rather, the plain language of the statute contemplates that the use of the tangible personal property of an established business for use by any person constitutes a taxable withdrawal from stock. Consistent with the common meaning of the word use, we have held that "the use of a thing . . . means

---

words their usual and ordinary meaning. *See Thurston v. Safe Surgery Arkansas*, 2021 Ark. 55, at 8, 619 S.W.3d 1, 7. As stated above, when the language of the statute is not ambiguous, as is true in the present case, the analysis need not go further because the intent is gathered from the plain meaning of the language used. *See Yamaha*, *supra*.

[5]The dissent states, "[i]nexplicably, the majority does not consider what is meant by that all-important phrase 'withdrawal from stock.'" To the contrary, we are guided by the statutory definition of "withdrawal from stock" as prescribed by the legislature. We have held that, "[w]hen the will of the General Assembly is clearly expressed, we are required to adhere to it without regard to consequences. It is not the function of this court to legislate; to do so would be a clear violation of this court's authority." *Hatcher v. Hatcher*, 265 Ark. 681, at 687, 580 S.W.2d 475, 477 (1979) (internal citations omitted). It is the function of the General Assembly to offer remedial legislation to address perceived statutory inadequacies. *See McMillan*, *supra*.

that the user is to enjoy, hold, occupy, or have in some manner the benefit thereof." *Galloway v. Sewell*, 162 Ark. 627, 632, 258 S.W. 655, 656 (1924). Bowlin and Raymick had been given vehicles to drive as part of their employment-compensation packages offered by Trotter Ford, and Harper had been given vehicles to drive as part of her husband's compensation package offered by Trotter Auto. Trotter had provided Nelson, as the daughter of the dealerships' owner, vehicles to drive since she was sixteen years old. Bowlin testified that he drove each vehicle that he received from Trotter approximately 5,000 miles. Nelson testified that she drove each vehicle she received from Trotter between 5,000 and 10,000 miles. Harper testified that she drove each vehicle she received from Trotter approximately 5,500 miles. The record demonstrates that these individuals enjoyed the benefits of the vehicles in question as any person would enjoy a vehicle they owned—without restriction, they relied on the vehicles as their primary means of transportation and transported their families and pets, ran personal errands, drove to and from work, and went on vacations in the vehicles. As such, it is clear under these circumstances that the vehicles were used, and therefore, withdrawn from stock based on the plain language of section 26-52-322. Accordingly, the withdrawal of each vehicle from Trotter's stock was subject to taxation under the plain language of section 26-52-322, and the circuit court erred in its interpretation of the statute.

## 2. *Sales tax obligations*

ADFA further contends that the circuit court erred in finding that ADFA had not met its burden of proof regarding Trotter's sales tax liability and determining that the use of the vehicles was not a taxable transaction. Specifically, ADFA asserts that the laws relied

upon by both Trotter and the circuit court concerning other fines, penalties, and the obligation to pay sales tax on subsequent transactions have no bearing on an assessment of sales tax for the use of a vehicle in a dealer's inventory.

In tax cases, ADFA carries the initial burden of proving the imposition of the tax by a preponderance of the evidence. *Gates v. Walther*, 2023 Ark. 74, at 4, 665 S.W.3d 217, 219; *see also* Ark. Code Ann. § 26-18-313(d) (Repl. 2020). Having reviewed the record before us, we conclude that ADFA proved Trotter's tax liability by a preponderance of the evidence. As discussed above, the statute upon which ADFA based its tax assessments provides that sales taxes are to be levied on withdrawals from the stock of a business, which includes the use of that stock. *See* Ark. Code Ann. § 26-52-322(b)(1). The circuit court's March 9 orders concluded that ADFA had ignored several statutes that it deemed more specific than section 26-52-322, including income tax laws regarding the taxability of fringe benefits; section 26-52-510, which imposes sales tax on the sale of a motor vehicle; and section 27-14-1704, which imposes penalties for the misuse of dealer license tags.

As an initial matter, we must note that the tax laws governing the assessment of income tax on fringe benefits are not applicable to the present case. Any taxes assessed against the income of Trotter's employees have no bearing on ADFA's assessments, because the imposition of income taxes has no bearing on the sales taxes owed by the dealerships by virtue of the use of vehicles in their inventories. *See generally Sims v. Weldon*, 165 Ark. 13, 19, 263 S.W. 42, 44 (1924) (explaining that sales tax is the antithesis of an income tax).

Next, the circuit court held that, in making its assessments, ADFA improperly substituted section 26-52-322 for the more specific statute, section 26-52-510, which

11

requires a consumer to pay sales tax on the purchase of a vehicle on or before the time for registration. *See* Ark. Code Ann. § 26-52-510(a)(1) (Repl. 2020). Similarly, Trotter contends that ADFA collected sales tax on the vehicles in question at the time buyers registered the vehicles, and ADFA is not entitled to assess and collect sales tax twice. However, it is undisputed that a sale of the vehicles in question did not occur during the period giving rise to the tax assessments. Rather, here, the sales tax assessed against Trotter was attributable to the use of the vehicles. As ADFA correctly notes, a vehicle may be involved in many transactions during its lifetime that will trigger sales tax liability. *See generally Cook v. Sears-Roebuck & Co.*, 212 Ark. 308, 315, 206 S.W.2d 20, 24 (1947) (explaining that taxes are not levied on the seller or the consumer, but rather, they are levied on transactions). Thus, both the use and the subsequent sales of the vehicles in question trigger sales tax liability, and section 26-52-510 is not relevant to an analysis of the taxability of the use of the vehicles pursuant to section 26-52-322.[6]

Finally, consistent with the reasoning in the circuit court's orders, Trotter argues that the lawful way for ADFA to address Trotter's admitted misuse of four dealer license tags

---

[6]The dissent posits that "section 26-52-3[2]2 exists in our Tax Code to cover the situation, in which a piece of tangible personal property already benefited by the sales-for-resale exemption will not increase a merchant's gross receipts[,]" and that "'withdrawal from stock' can only mean that the item is no longer offered for sale to the public and consequently will not show up in a merchant's gross receipts." However, a review of the statute itself yields no such limitation or purpose. As set forth above, the rules of statutory construction do not permit us to read into a statute words that are not there. *See McMillan*, *supra*. Thus, we decline to interpret "withdrawal from stock" to mean something contrary to its statutory definition. Further, the dissent's reliance on sections 26-52-301 and -401 in support of its position is misguided, because its reasoning is based on the flawed premise that taxes may only be levied upon the sale of a vehicle. This interpretation ignores the plain language found in section 26-52-322, which provides an independent avenue for taxation imposed as a result of a withdrawal from stock.

was to levy a fine pursuant to section 27-14-1704, not to treat it as a transaction subject to sales tax. However, the use of the vehicles in the present case violated section 27-14-1704 because the vehicles donned dealer license tags despite the fact that the drivers were not authorized to use the tags, and the very same conduct simultaneously obligated Trotter to remit sales tax under the circumstances because the vehicles had been withdrawn from stock within the meaning of section 26-52-322. Thus, the imposition of a penalty for a violation of section 27-14-1704 and the assessment of sales tax upon a withdrawal of stock pursuant to section 26-52-322 are not mutually exclusive. Trotter cites no authority to support the notion that the imposition of a penalty as the result of certain conduct forecloses the imposition of a tax for the same conduct, and we are not persuaded by this argument. *See generally Gates*, 2023 Ark. 74, at 1–2, 665 S.W.3d at 218 (the Gateses' failure to pay individual and corporate state taxes resulted in criminal liability, but the criminal sentence did not negate the obligation to pay the taxes).

Accordingly, having determined that ADFA met its burden of proving by a preponderance of the evidence that Trotter was subject to sales tax based on the plain language of Arkansas Code Annotated section 26-52-322, we conclude that the circuit court erred in granting summary judgment in favor of Trotter and reverse and remand.

Having found in favor of ADFA on its first point on appeal, we reverse on that basis and need not address the remaining point on appeal.

Reversed and remanded.

WOOD, J., concurs.

WOMACK and WEBB, JJ., dissent.

13

**RHONDA K. WOOD, Justice, concurring.** I agree with the majority that the circuit court erred when it granted summary judgment in appellees' favor. I also agree with the majority's analysis in Part II(A)(1). This section construes the plain language of the statute and concludes that appellees' use of the vehicle constitutes a taxable event. I would end the analysis here. We do not need to go further. Thus, I do not join the remainder of the majority's analysis.

**BARBARA W. WEBB, Justice, dissenting.** I respectfully dissent. The majority has failed to properly construe Arkansas Code Annotated section 26-52-322. While it is true that the so-called "cardinal rule of statutory construction" is to construe the statute just as it reads, giving the words their ordinary and usually accepted meaning in common language, it is not the only rule. This court has also held that the basic rule of statutory construction to which all other interpretive guides defer is to give effect to the intent of the legislature. *McCoy v. Walker*, 317 Ark. 86, 876 S.W.2d 252 (1994). In interpreting a statute and attempting to construe legislative intent, the appellate court looks to the language of the statute, the subject matter, the object to be accomplished, the purpose to be served, the remedy provided, legislative history, and other appropriate means that throw light on the subject. *Id*. Accordingly, we are supposed to construe statutes so that, if possible, every word is given meaning and effect. *Gafford v. Allstate Ins. Co.*, 2015 Ark. 110, 459 S.W.3d 277. *Id*. To do so, we are required to construe the entire statute so that no word is left void, superfluous, or insignificant, and meaning and effect are given to every word in the statute if possible. *Id*. Moreover, interpretation of a statute should not be done in a vacuum; when construing any statute, we must place it beside other statutes relevant to the subject matter in question and

ascribe meaning and effect to be derived from the whole. *Stivers v. State*, 354 Ark. 140, 145, 118 S.W.3d 558, 561 (2003). Statutes relating to the same subject should be read in a harmonious manner if possible. *Gafford, supra.* Accordingly, it is improper to only consider the reference to "use" in section 26-52-332 without harmonizing it with the other language in the statute as well as the rest of the code section and other related statutes. *Id.*

Trotter purchases vehicles from a wholesale supplier and resells them to the public. Trotter's purchases from its supplier are exempt from sales tax pursuant to Arkansas Code Annotated section 26-52-401(A)(12), which states, in pertinent part:

> There is specifically exempted from the tax imposed by this chapter the following: . . . Gross receipts or gross proceeds derived from sales for resale to persons regularly engaged in the business of reselling the articles purchased, whether within or without the state if the sales within the state are made to persons to whom gross receipts tax permits have been issued as provided in § 26-52-202.

This is known as the "sales-for-resale" exemption. Typically, sales tax is collected when the vehicles are sold to a consumer. The tax collected in that situation is a gross-receipts tax. Section 26-52-301 and following is the part of the Arkansas Tax Code that deals with gross-receipts taxes. Section 26-52-301 declares, in pertinent part:

> Except for food and food ingredients that are taxed under § 26-52-317 and except for used motor vehicles, trailers, and semitrailers that are taxed under § 26-52-324, there is levied an excise tax of three percent (3%) upon the gross proceeds or gross receipts derived from all sales to any person of the following:
>
> (1) The following items:
>
> (A) Tangible personal property[.]

By the plain wording of the Arkansas gross-receipts-tax statute, the tax does not come due until a merchant sells a piece of tangible personal property—in Trotter's case, an

15

automobile—and that purchase shows up in the merchant's gross receipts. This point is important because section 26-52-332 exists in our Tax Code to cover the situation, in which a piece of tangible personal property already benefited by the sales-for-resale exemption will not increase a merchant's gross receipts.

The title of section 26-52-322 is "Withdrawal from stock---Definition. Inexplicably, the majority does not consider what is meant by that all-important phrase "withdrawal from stock." Looking at the whole statute, as we must, "withdrawal from stock" can only mean that the item is no longer offered for sale to the public and consequently will not show up in a merchant's gross receipts. Section 26-52-322 contemplates a number of ways in which withdrawing an item from stock may manifest. It could be consumed in the business as was the case in *Walther v. FLIS Enterprises, Inc.*, 2018 Ark. 64, 540 S.W.3d 264 (managers of the company's Burger King restaurants were given free meals, which were not rung into the store registers). The item could be donated to charity. *See* Ark. Code Ann. § 26-52-322(b)(2)(B). The item could be retained for use in the business, but in the case of automobiles, the dealership is required to comply with the specific provision in section 26-52-510(b)(2)(A)(i), which includes obtaining a certificate of title and registering the vehicle. Finally, section 26-52-322 also contemplates withdrawal from stock through the "use by any other person." That contingency is the central issue in this case.

It is ADFA's position that all use results in the accrual of a gross-receipts tax pursuant to section 26-52-322. This interpretation is not substantiated by our Tax Code. Arkansas Code Annotated section 26-52-510 prescribes the manner in which gross-receipts taxes are typically collected on an automobile. It requires that the tax be paid when the purchaser

registers the vehicle. Ark. Code Ann. § 26-52-510(a). Registration of the vehicle is integral to the collection process. *Id*. The display of license plates reflects the registration status of the vehicle. That is why Arkansas Code Annotated section 27-14-1704 is of paramount importance in this case and must not be ignored when properly construing gross-receipt-tax statutes. Special license plates issued to a car dealer allow use of the vehicle, which includes "business and personal trips," without jeopardizing its sales for resale exemption. Ark. Code Ann. § 26-52-510(b).[1]

I am mindful that Trotter has confessed to misusing these special license plates. However, it does not logically follow that misuse of these plates constitutes a "withdrawal from stock." There is no dispute that at all times the vehicles in question remained in Trotter's active sales inventory. These vehicles were in fact sold, and taxes were paid on the gross receipts that they generated. It is absurd to call the use of these vehicles a withdrawal from stock. By the majority's reasoning, it is a withdrawal without actual withdrawal. Previously, this court has held that it will not interpret a statute to yield an absurd result that defies common sense. *Citifinancial Mtg. Co. v. Matthews*, 372 Ark. 167, 271 S.W.3d 501 (2008); *Nat'l Home Ctrs., Inc. v. First Ark. Valley Bank*, 366 Ark. 522, 237 S.W.3d 60 (2006); *Nucor Corp. v. Kilman*, 358 Ark. 107, 186 S.W.3d 720 (2004); *Green v. Mills*, 339 Ark. 200, 4 S.W.3d 493 (1999); *Henson v. Fleet Mtg. Co.*, 319 Ark. 491, 892 S.W.2d 250 (1995); *Stover v. Stover*, 287 Ark. 116, 696 S.W.2d 750 (1985). The case before us does not provide compelling justification for this court to abandon this rule of law and interpret section 26-52-322 to

---

[1]By the majority's reasoning, the dealer plate statute would be rendered superfluous, and common practices at car dealerships like allowing a customer to test-drive a vehicle would become a taxable event.

allow ADFA to claim that four automobiles were withdrawn from stock when the uncontroverted proof was that the vehicles were always listed for sale and, in fact, were sold to consumers. The sales of these vehicles to consumers are the only bona fide events lawfully capable of triggering the imposition of the gross-receipts tax.

The majority's reliance on *Cook v. Sears-Roebuck & Co.*, 212 Ark. 308, 315, 206 S.W.2d 20, 24 (1947), for the proposition that "a vehicle may be involved in many transactions during its lifetime that will trigger sales tax liability," only highlights the absurdity of the result it espouses. The *Oxford English Dictionary* defines "transaction" as "an instance of buying or selling something; a business deal." Obviously, by the giving the word "transaction" its "ordinary and usually accepted meaning in common language," Trotter's allowing the use of the vehicles in question is not a "transaction," and thus, logically, it engendered no "sales tax liability."

The circuit court should be affirmed.

WOMACK, J., joins.

*Taylor Duvall*, *Keith Linder*, and *Jackson Taylor*, Office of Revenue Legal Counsel, for appellant.

*Mitchell, Blackstock, Wright & Alagood, PLLC*, by: *Michael W. Mitchell*, *Greg Alagood*, and *Michael Muskheli*, for appellees.